OGDEN CLAY COMPANY, RESPONDENT, *v.* W. H. HARVEY, APPELLANT.

| | |
|---|---|
| 9 | 497 |
| 15 | 533 |
| 9 | 497 |
| 18 | 303 |
| 19 | 229 |
| f19 | 357 |

CORPORATIONS.— UNPAID SUBSCRIPTIONS ON STOCK.— DEFECTS IN ORGANIZATION.—Even though there may be defects and informalities in the organization of a corporation, yet it appears that the subscriber to the stock agreement was present at the meetings where the informalities occurred, and made no objection thereto then or for months thereafter, but paid several installments on his stock and received the same, such subscriber waived the informalities.

ID.—ID.—RESOLUTION FOR CALLS.—Where no method was prescribed by the by-laws or articles of agreement for collecting unpaid subscriptions, but subsequently thereto at a meeting of the subscribers to the stock, a resolution was adopted making calls for unpaid subscriptions at certain dates thereafter, several of which calls the defendant, a subscriber, paid, *held,*

32

that the resolution became a by-law, although not adopted with the formalities required.

TRIAL.— INSTRUCTIONS.— ERRONEOUS ASSUMPTIONS.— Requested instructions, which are erroneous as applied to the facts in the case, are properly refused.

CORPORATIONS.—SUBSCRIPTION TO STOCK.—RATIFICATION.—Where the subscriber to the capital stock signed the original stock agreement, but afterwards articles of agreement, to which his name was signed, were filed and an incorporation had thereon, and he thereupon acquiesced in the formation of the company, participated in carrying out its objects and paid calls on his stock; *held*, that his right to object on account of changes in the articles of agreement filed, was waived by his assent and ratification.

ID.—UNPAID STOCK.—LIABILITY OF SUBSCRIBER.—Where the capital stock of a corporation remains unpaid at the time of its organization, such unpaid stock becomes a trust fund for the payment of its liabilities and may be called in by the directors, who are the trustees of the fund, at such times and in such amounts, as may be provided by the by-laws or articles of agreement. When a person becomes a stockholder his liability is complete and he is liable for calls as long as he remains the owner of the stock.

APPEAL from a judgment of the district court of the fourth district and from an order refusing a new trial, Hon. James A. Miner, judge. The opinion states the facts, except the following:

These calls were not made, so far as the record shows, in accordance with section 2375 of Compiled Laws of 1888, noticed in *Gary* v. *Mining Co.*, *supra*. That article provides for calls by the board of directors, but the call is denominated an assessment.

The complaint alleged the incorporation under articles of agreement, the subscription thereto by defendant for twenty shares of the par value of $50, the resolution of the meeting of stockholders, the calls in accordance there-

with by the board of directors, and the balance due from defendant. The answer set up specifically the facts under which the defendant claimed he was not bound, to-wit: that he only signed a subscription paper for a corporation which was never formed, and on that subscription he was not bound to the plaintiff corporation; that he paid in on this subscription paper the sum of $360; that certain promoters of the corporation took the said subscription paper and attached the same to certain articles of agreement, but said pretended articles were never signed by any one; that he never ratified any acts of the plaintiff corporation, but always repudiated all connection therewith.

The instructions of the court were as follows, omitting formal parts:

"If the jury believe, from the evidence in this case, that the defendant Harvey and the other defendants signed the following memorandum of agreement to the effect: 'We, the undersigned, subscribe and agree to pay the sums set opposite our names, in the manner and at the time hereinafter agreed upon by the subscribers hereto, to the capital stock of the Ogden Clay Company. The object of said company is to erect a plant in the city of Ogden for the purpose of manufacturing common pressed brick, drain tile, clay shingles, stone ware and sewer pipe.' And that thereafter the said memorandum was attached to such other written articles as are required by the statutes of this Territory—which has been read in your hearing— to be made and filed with the probate clerk of this county and with the secretary of the Territory to constitute a corporation under the laws thereof, and that the articles so attached conformed to the memorandum of agreement in respect of the objects and purposes of the corporation as to capital stock and otherwise, then in such case the signing by the defendants of such memorandum would be authority to such promoters to attach such memorandum

to such other articles required by the statutes in such cases, and the defendants would be bound by their signatures the same as if the whole paper had been completed and made up at the time of such signing.

"If the jury find that at the time this suit was brought the agreement of incorporation had not been subscribed by the defendant Harvey, or that the capital stock was placed at a different sum than stated in the preliminary subscription paper or that in any other material respect the plaintiff company was not organized in the manner provided by law and in conformity to the terms and conditions of the subscription paper, your finding must be for the defendant—that is, the defendant Harvey—unless you also find from the evidence that the defendant Harvey waived his right to insist upon such a legal organization, or assented to the organization as incorporated. These instructions apply to both defendants.

"If you find from the evidence that the defendant Harvey signed a subscription paper for a proposed corporation as shown in this case, when it was stipulated and agreed that the capital stock should be forty-five thousand dollars, and you further find that without the knowledge or consent of Harvey, said proposed company was organized with a capital of one hundred thousand dollars, this will release the said Harvey from his subscription, unless you further find he acquiesced or assented to the organization as subsequently altered and organized. And if you should find that he made a payment on his subscription and received stock, without knowledge that a company had been organized with a capital of $100,000, but that immediately afterwards when he did hear first of it, he repudiated the company as organized, then the fact that he made a payment and received stock, while in ignorance of said change in the capital stock will not bar or estop the said Harvey from taking advantage of said unauthorized alteration in

the capital stock, if it was so; and to hold him to this company, you must find that he had knowledge of the change and acquiesced in it, and the burden of proving this is on the plaintiff. But if you find that Harvey did acquiesce and assent to the incorporation with knowledge of the facts, and continued to do so afterwards, it is too late for him to repudiate the company as organized or to shake off his responsibility to pay, which he had previously recognized—if he had done so—and agreed to by his own acts—if he did so.

"A waiver is a voluntary act and implies an election of a party to dispense with something of value, or to forego some advantage, which he might at his option have demanded or insisted on. So a waiver is also defined to be and is an intentional relinquishment of a known right, and there must be both knowledge of the right and an intention to relinquish it. Acting with and acquiescing in the organization as incorporated, or receiving his stock or making payments of assessments after incorporation, with knowledge of the facts, will estop either of the defendants from setting up the defense made. Ratification, acquiescence or assent may be shown by acts of the parties, and is a question for the jury to determine under all the facts and circumstances of the case. Again, ratification is either express or implied. Express ratifications are those made in direct terms of assent. Implied ratifications are such as the law presumes from the acts of the party, as, for instance, if Peter buys goods for James, and the latter, knowing the fact, receives them and applies them to his own use, that would be a ratification. By ratifying a contract or act a man adopts the agency altogether, as well what is detrimental as what is for his benefit. As a general rule the principal has the right to choose whether he will adopt the unauthorized act or not. But having once ratified the act, upon a full knowledge of all the

material circumstances, the ratification cannot be revoked or recalled, and the party becomes bound as if he had originally authorized the act.

"The ratification of a lawful contract by one party has a retrospective effect and binds the person ratifying from its date, and not only from the time of ratification, for ratification is equivalent to an original authority. So if this party took part in the organization of the company and the incorporation thereof, and participated in the proceedings and urged the incorporation and performed any act after its completion, receiving benefit therefrom, and afterwards ratified what was done by the corporation, then he is bound by his acts and cannot retreat or back out from the obligation. You see all this is dependent upon the evidence in the case; it depends upon what you find the facts to be in the case, as you are the judges of these facts. Now, gentlemen, you will take this case and give it such consideration as is due; consider the facts and circumstances in all their bearings and all their parts; give each witness such credit as you think he is entitled to in the case; take the papers of exhibits in the case on the question of whether Mr. Harvey signed that or ratified the act of this corporation. You may take into consideration the question as to whether he signed the receipt of stock, for it is a question as to whether he did or not.

"Determine whether he signed the receipt that has been introduced in evidence in this case. That is a fact also for the jury."

The evidence showed the articles of agreement, closing up with an attesting clause not signed, and then on the next page the following: "We, the undersigned, hereby subscribe and agree to pay the sums set opposite our names in the manner and at the times hereinafter agreed upon by the subscribers hereto to the capital stock of the Ogden Clay Co.; the object of said company is to erect a plant

in the City of Ogden for the purpose of manufacturing. common, pressed brick, drain tile, clay shingles, stoneware and sewer pipe. Paid up capital, $45,000." Then followed. a long list of names and amounts, among them the defend- ant Harvey's, for $1,000, then an acknowledgment and certificate. The evidence was conflicting on several matters. in regard to meetings, but witness Harvey, the defendant, admitted receiving the stock and signing the single paper quoted above.

*Messrs. Dey and Street,* for the appellant.

The rule of estoppel does not apply to a suit brought by the corporation against a stockholder upon a subscrip- tion, made with a view to organization and preliminary thereto, where other acts are required by law as a condi- tion precedent to the exercise of corporate powers. *Wil- liams* v. *Association,* 26 Ind. 310; *Indianapolis Co.* v. *Herkimer,* 46 Ind. 145; 2 Morawetz on Corp. sec. 738; Cook on Stock, sec. 186. The laws of Utah provide certain requirements for a valid incorporation; an agree- ment signed by each of the incorporators stating the name of. the association, names and places of residence of stock- holders, the time of duration, the business agreed upon, place of general business, amount of stock subscribed by each incorporator, amount of its share and limit of capital stock, number and kind of officers, qualifications and terms. of office, time and manner of election, removal or resigna- tion, whether private property of incorporators is liable. Here none of the requirements were followed, but a pre- liminary agreement was inserted into certain articles of incorporation, by a process closely akin to forgery. No. authority had been given to cure defects and hence the agreement was not binding. *Railroad Co.* v. *Mabbot,* 58. N. Y. 397; *Plankroad Co.* v. *Griffin,* 24 N. Y. 150; *Reed*

*v. Railroad Co.*, 50 Ind. 342. Morawetz on Corp. sec. 53. The resolution was not a by-law, and it was inoperative against Harvey, see cases last cited. Harvey had no knowledge of the facts constituting the illegality of the incorporation. *Levesy* v. *Omaha Hotel*, 5 Neb. 50; *Oldtown, etc.*, v. *Veazie*, 39 Me. 571. The implied waiver must be educed by very strong circumstances and is not shown by such facts as paying a deposit, attending a meeting, participating in preliminaries, paying assessments at time of subscribing, or assessments for surveys. Cook on Stock, sec. 181; *Railroad Co.* v. *Gould*, 2 Gray, 278; *Cotton Mills* v. *Abbott*, 69 Cush. 423; *May* v. *Railroad Co.*, 48 Ga. 109; *Pitchford* v. *Davis*, 5 Mees. and W. 2; *Railroad Co.* v. *Johnson*, 30 N. H. 390; *Railroad Co.* v. *Sullivan*, 57 Ga. 240, and cases *supra*.

*Mr. Ogden Hiles*, for the respondent.

BARTCH, J.:

The plaintiff brought this action to recover unpaid subscriptions to its capital stock. The jury returned a verdict in its favor for $729.60 and judgment was rendered accordingly. The defendant appeals from the judgment and from the order denying a new trial, assigning various errors.

Counsel for appellant contend that the court erred in admitting in evidence the articles of incorporation, claiming that the document showed on its face that it was invalid; that the signature of the defendant was not thereon, but only on a separate and distinct paper; and that the formalities of the statute, in relation to corporations, were not complied with. It appears from the record that the document contains the names of forty-six subscribers, among them the name of the defendant; that it contains the usual articles, relative to the objects of the company,

the amount of capital stock, etc.; and that the attesting clause is followed by an agreement, in which the subscribers agree to pay the several sums set opposite their names, and reference is therein made to the objects of the company, and the business thereof. (The defendant admits that he signed this agreement, and subscribed to $1,000 of the capital stock.) Then follows the acknowledgment and affidavit of three of the subscribers in the usual form.

It is apparent that there were irregularities and informalities in the organization of the company, but the evidence tends to show that the defendant was present at the meeting of the subscribers and assisted in the organization of the corporation; that he made no objection thereto for several months thereafter; and that he paid several installments of his subscription and signed the receipt for his stock. Under the circumstances, as they appear from the record, we are of the opinion that these informalities were waived by the subsequent acts of the defendant, and that the articles of incorporation were admissible.

Exception is taken to the refusal of the court to charge the jury as follows: "The court instructs the jury that they must find for the defendant Harvey if they find at the commencement of this action there was no provision in the articles of incorporation, or in the by-laws of the company, providing the time and manner of paying subscriptions to the capital stock."

This request assumes that there was no way provided to call in the unpaid subscriptions, and that no way could be provided except in the articles of incorporation or by-laws, and further assumes that the time to make such provision was limited to the commencement of this action.

Sec. 2268, Comp. Laws of 1888, contains a proviso as follows: "Provided further, that this section shall not be so construed as to prohibit the stockholders of any corporation from regulating the mode of making subscriptions

to its capital stock, and calling in the same by by-laws or express contract." And section 2276 Id. provides: "The corporation shall collect of the stockholders the amount of stock by them subscribed, in such installments and at such times as shall be settled by the agreement or by-laws."

These provisions make it the duty of corporations to call in the subscriptions to the capital stock in the manner provided by contract or by-laws. The law does not limit the time of making the contract or by-laws. Nor does it direct how or when they shall be made, but it is evident that the corporation must provide a way, in the manner indicated, before it can call in its subscriptions. In the case at bar the subscribers to the stock, at a meeting held on the 28th day of February, 1890, made provision to call in the unpaid stock, by adopting a resolution as follows: "Resolved, that one per cent. of the paid-up capital stock be levied, and payable at once, and ten per cent. be payable April 1, 1890, and not to exceed twenty-five per cent. be levied monthly thereafter."

It appears that this resolution was passed at the meeting for organization, and regularly entered in the minute book of the company: There may be some doubt, under the evidence, as to whether the defendant was present at the meeting, while it was being passed, but it is clearly shown that he paid three installments, in answer to calls made in accordance therewith, and thus having acted under and recognized it, after the organization of the corporation, he can not now be heard to assail its validity.

The resolution must be held to have the same force and effect as a by-law, at least upon all subscribers to stock who assented to it and acted in obedience to its terms. It became one of the constating instruments of the corporation and was binding on its members, although it may not have been adopted with the same formality as a by-law. Wood's Field on Corp. sec. 38; Green's Brice's Ultra Vires,

40. Under these circumstances the request, under consideration, failed to state correctly the law applicable to this case, and was therefore properly refused.

The defendant also excepted to the admission in evidence of the testimony of the witness Stevens, in regard to the subscriber's meeting, held February 28, 1890, and to the minutes thereof, including the resolutions passed relating to the calling in of the unpaid capital stock, and also to the introduction in evidence of the receipt of the defendant, upon the stub of the stock book, for his stock. We do not think these exceptions were well taken. Nor do we think the court erred in rejecting the evidence of the defendant, offered to show that the subscribers to the preliminary agreement never signed the articles of incorporation. There is no issue on this point in the pleadings. The defendant admits, in his answer, that he signed the paper which became a part of the articles. Nor did the court err in refusing to charge the jury, as requested by the defendant, regarding the resolution, adopted at the meeting of the subscribers, held on February 28, 1890, and regarding the receipt and acceptance of the certificate of stock by the defendant. These requests were erroneous, as applied to the facts and circumstances revealed by the record. Nor do we consider the newly discovered evidence a sufficient ground for granting of a new trial.

Counsel for appellant further objects to a certain portion of the charge, relating to the agreement, signed by the subscribers to the capital stock and attached to the articles of incorporation. Upon an examination of the entire charge, and construing it as a whole, it appears to contain no reversible error. The next question for consideration is that of waiver. The defendant claims that his signature was attached only to a preliminary agreement; that it contained no authority or direction to attach it to the articles of incorporation; that he never gave his consent to have it

so attached; that the capital stock in this agreement was fixed at $50,000, and in the articles of incorporation, without his knowledge, at $100,000. These are matters which would be of avail to him if he had taken advantage of the situation in time, and repudiated the organization of the corporation. The question is, can he do so now, or is he estopped, because of his ratification of the acts of the company after it came into being as a *de facto* if not a *de jure* corporation?

The statute of this Territory requires certain formalities, which are requisites of a strictly legal corporation; among these is a provision that, "They shall enter into an agreement in writing, signed by each of them," that is, by each of the incorporators or subscribers to the capital stock, and then further provides what this agreement shall contain, and how it shall be acknowledged, etc. 2 Comp. Laws of 1888, sec. 2268. If these requirements are not complied with, a stockholder unquestionably has a right to object to the acts of the corporation, and to refuse to have anything to do with it, or to recognize it, but he must make his objection at a seasonable and within a reasonable time. He cannot assist in its organization, participate in its meeting, pay installments of subscriptions to stock, and generally acquiesce in the acts and affairs of the concern for months, while there is a hope of a prosperous business, and then, when such hope begins to fade, and a call for the subscribers to pay in the balance of their unpaid subscriptions to its capital stock to liquidate accumulated debts, is made, insist that he ought not to be bound to pay, because the corporation has no legal existence. Nor can he sleep on his rights and take the chances of a favorable turn of affairs. The formalities, required by our statute, are useful as a protection to stockholders and others, but they may not be turned into instruments of dishonesty or fraud, either against or on behalf of a corporation.

On this question of waiver there appears to be a substantial conflict in the evidence, but, after the verdict of the jury, it must be assumed that he ratified the acts of, and participated in carrying out the objects of, the corporation; for the question was properly submitted to them, with the result of a finding against the appellant, and no improper conduct on their part will be presumed.

By his acts and assent, he recognized the company as a *de facto* corporation. He must therefore be held to have waived his legal rights in the premises, and to be estopped from denying its rightful existence. In *Sanger* v. *Upton*, 91 U. S. 56, the court said: "Where there are defects in the organization of a corporation which might be fatal on a writ of *quo warranto*, a stockholder who has participated in its acts as a corporation *de facto* is estopped to deny its rightful existence." Cook on Stock and Stockholders, sec. 52; *Inter Mountain Pub. Co.* v. *Jack*, 6 Pac. Rep. 20; *Athol Music Hall Co.* v. *Carey*, 116 Mass. 471; *Ogilvie* v. *Knox Ins. Co.*, 22 How. 380.

We are of the opinion that the defendant is a stockholder of the plaintiff corporation, and is therefore liable for his unpaid subscription to the capital stock. Where the capital stock of a corporation remains in part unpaid, at the time of its organization, such unpaid stock becomes a trust fund for the payment of its liabilities, and may be called in by the directors, who in law are the trustees of the fund, at such times and in such amounts as may be provided by the by-laws or agreement of the corporation. This fund is to be managed, by the trustees, for the benefit of the stockholders while the corporation remains solvent, and for the benefit of the creditors if it becomes insolvent. When a person becomes a stockholder his liability is complete, and he cannot relieve himself, except by payment. There is, in law, an implied promise, on his part, that he will pay the calls made for unpaid subscriptions, so long

as he shall own the stock. Cook on Stock and Stockholders and Corp. Law, sec. 199; *Upton* v. *Tribilcock,* 91 U. S. 45; *Germantown Pass. Ry. Co.* v. *Fitler,* 124; *Wood* v. *Dunner,* 3 Mason, 308; *Webster* v. *Upjohn,* 91 U. S. 65; *Sawyer* v. *Hoag,* 17 Wall. 610. There appears to be no reversible error in the record. The judgment is affirmed.

SMITH, J., concurred.