RICY H. JONES, Appellant, *v.* THE NEW YORK LIFE INS. COMPANY et al., Respondents.

Life Insurance—Assignment of Policy—Security—Proposal—Acceptance.

1. A life insurance company issued a policy to one L. H. J. Afterwards the insured became indebted to R. H. J., who paid the

premium on the policy one year at the request of the insured, and several other years at his own instance. R. H. J. then proposed in writing to the insured that he should assign the policy to him as security for his debt, and in the same written proposal agreed to assign the policy back upon payment of the debt, but in case of the death of the insured the assignee should be entitled first to reimbursement out of the proceeds of the policy. The insured not making the assignment immediately upon the receipt of the proposal, the proposer sent one B. H. J. to him, with instructions to induce him to make the assignment. Then the insured. after discussing the proposal and being assured by B. H. J., who was a lawyer, that the matter was all right, the proposal not having been withdrawn, nor the time of its acceptance limited, made the assignment, absolute in form, to R. H. J., creditor; the same being executed six days after the date of the proposal. Before payment of the debt, the insured died. In an action to recover the whole. amount' of the policy, by R. H. J., as assignee against the insurance company, the company (having answered that B. H. J., as administrator of the estate of the deceased, claimed the insurance money), by order of the court paid the same into court and was discharged. Thereupon, by order of the court, the administrator was made defendant, and filed an answer and cross complaint, claiming the fund in behalf of the estate. *Held*, that the assignment, though absolute in form, constituted merely a security for the indebtedness of the assignor to the assignee; that, the assignment having been made as security for the debt, the creditor was entitled to the payment of his debt out of the funds in court; and that the administrator was entitled to the balance of the fund for the benefit of the decedent's estate.

2. *Written Proposal or Offer—Acceptance of—Withdrawal.*
   Where a proposal or offer is made to another by letter, and an answer requested, the same may be withdrawn or revoked at any time before acceptance, but not afterwards.

(No. 828.   Decided Oct. 18, 1897.)

Appeal from the Second district court, Box Elder county.   C. H. Hart, *Judge.*

Action by R. H. Jones against the New York Life In-

surance Company to secure the amount of an insurance policy issued to plaintiff's brother, Lewis H. Jones, deceased. B. H. Jones, the administrator of the estate of Lewis H. Jones, was made defendant, and the company upon paying the policy to the clerk of the court was discharged. Judgment for defendant B. H. Jones. Plaintiff appeals. *Affirmed.*

*R. H. Jones* and *Moyle, Zane & Costigan,* for appellant.

As the title to the chose in action (personal chattel) passed by the assignment of the policy, it becomes a chattel mortgage.

"A mortgage of personal property passes the present legal title in the property itself to the mortgagee subject to be re-vested in the mortgagor, his heirs or assigns, upon the performance by him or them of an express condition subsequent." * * * "On breach of condition the title becomes absolute at law in the mortgagee." Jones, Chattel Mort. p. —; 8 Johns. 96; *Cook* v. *Lion Fire Ins. Co.,* 67 Cal. 370; *Heyland* v. *Badger,* 35 Cal. 411.

Where the insured assigns a policy which he has effected on his own life (payable to himself, his administrators or assigns) to his creditor, and the assignment admits value received and the insured at the time does not obligate himself to pay the premiums, and the assignee pays them, such an assignment under the law is an absolute sale and transfer (and can not be security), and the assignee who maintains the policy and keeps it alive by paying the premiums can hold all that he can recover on the policy after the death of the deceased and is not liable to the representatives, either in a suit to have a trust declared and enforced, or for money had and received, or for a bill of accounting, or for any other form of action, much less is he liable in an action brought upon a

fiction like that of the adverse party in this case to have the assignment cancelled on the theory that there was an imaginary $100 debt which was never paid.

The following cases cite this principle of law, in the order of its development, in England and America: *Godsel* v. *Webb*, 15 Eng. Ch. Rep. 100, year 1837; *Gottlieb* v. *Granch*, 53 Eng. Ch. Rep. 439-450, year 1853; *Knox* v. *Turner*, Lawyer's Rep. 5 Ch. 515; *Lee* v. *Hinton*, 54 Eng. Ch. Rep. 823, year 1854; *Bevin* v. *Conn. Mut. L. Ins. Co.*, 33 Conn. 244, year 1854; *Freme* v. *Brade*, 59 Eng. Rep. 582, year 1858; *Grant* v. *Kline*, 115 Penn. St. Rep. 685; *Grant* v. *Kline*, 9 Atl. Rep. 150, year 1887; *Amick* v. *Butler*, 60 Am. Rep. 722, year 1887; *Rittler* v. *Smith*, 2 Lawyer's Rep. Anno. 845, year 1889; Hine & Nichols Life Ins. 75; Bliss on L. Ins. 524; Ray on Contractual Limitations, p. 38.

*E. M. Allison*, for respondent.

The plaintiff asked for an assignment of the policy under certain conditions, and now seeks to ratify and retain the assignment but to repudiate the conditions under which it was made. This he will not be permitted to do. *Whittemore* v. *Cope*, 11 Utah 344; *Brown* v. *Parsons*, 10 Utah 223; *Clay Co.* v. *Harvey*, 9 Utah 497.

Then the plaintiff never withdrew nor revoked his offer to accept the assignment upon the conditions named, either before or after the assignment was executed and delivered. While an unaccepted offer is not binding upon the party making it, yet after acceptance, the contract is complete and the offer cannot then be revoked. Clark Cont., 46 *et seq.*; 3 Am. and Eng. Ency of Law (1st Ed.) 850, and cases cited.

The legal representatives of the debtor are entitled to the balance. *Pomeroy* v. *Life Ins. Co.*, 40 Ill. 398; *Warnock* v. *Davis*, 104 U. S. 775; *Cammack* v. *Lewis*, 82 U. S. 643; *Gilman* v. *Curtis*, 4 Pac. 1094.

BARTCH, J.:

This action was commenced against the defendant life insurance company to recover the sum of $1,500 on one of its policies, issued by the company to L. H. Jones. The insured assigned the policy to his brother, the appellant. The defendant company answered that B. H. Jones and R. D. Jones each claimed the insurance money, as administrator of the estate of L. H. Jones, deceased; that it was ignorant of the respective rights of the claimants, and not in collusion with either of them,—and asked that it be permitted to pay the money into court, and to be thence discharged. Thereupon, by order of the court, the money was so paid, the company discharged, and B. H. Jones and R. D. Jones were substituted as defendants, and given 10 days to file their pleadings to the complaint. Then B. H. Jones, as administrator of the estate of the deceased, filed an answer and cross complaint alleging, in substance, that the policy of insurance was assigned to the plaintiff by the insured for the purpose of securing a debt then due from the latter to the former, and that at the time of the assignment it was agreed between them that upon the payment of the debt the policy should be "assigned back," and returned to the insured. On information and belief it was alleged that before the death of the deceased, which is stated to have occurred August 26, 1894, the debt was fully paid and discharged. It was also alleged that the defendant B. H. Jones was the duly appointed, qualified, and acting administrator of the decedent's estate. After amendment of the cross complaint in accordance with the ruling of the court on a demurrer thereto, the plaintiff in his pleading admitted the assignment of the policy by the insured to him, but denied that it was made for the security of any debt, alleging that the assignment was intended as an absolute sale and uncon-

ditional transfer of the policy, and among other things, denied that there was any agreement to assign back the policy, or that the debt had been paid before or after the death of the insured. The plaintiff's affirmative allegations in answer to the complaint of the interpleader were answered by specific denials. At the trial it was held that the assignment of the policy was made and accepted as security for the debt due the plaintiff from the insured, and judgment entered awarding the plaintiff $542.57 out of the fund in the hands of the court, and the defendant, as administrator of the estate, $1,012.43. This appeal is from the judgment.

It may be observed at the outset that many of the errors assigned, and much of the matter—indeed the major portion of it—contained in the brief filed in behalf of the plaintiff, are so foreign to the real controversy in the case as to merit no serious consideration at our hands, not even though all the abstract propositions of law contained therein have been discussed, regardless of their application, in the brief of the respondent. Notwithstanding all the questions argued in their brief, and the numerous assignments of error, many of them absolutely frivolous, counsel for the appellant declare that "the vital question involved in the case" is, "Was the assignment of this policy in legal effect an absolute sale and transfer?" And this is conceded to be the essentially important question by counsel for the respondent. Clearly, the decisive point is here indicated, which is whether the assignment was made and intended by the insured, and received and accepted by the appellant, as an absolute transfer of the policy, or as security for the debt due the latter from the former. What the intention of the parties was, and the effect in law of the assignment, must be determined from the assignment itself, and from the

understanding of the parties prior to and at the time of its execution, as shown by their writings, acts, and conduct. It appears that the policy was issued to the insured on June 20, 1890, and that he paid the premium for that year. The next year the insured was out of the state, and wrote his brother, the appellant, two letters concerning the insurance, in one of which, dated July 19, 1891, he said, "I wish you would pay my yearly dues on my insurance policy for this year, if you can, so as it will not be forfeited;" and in the other, of July 28th of the same year, "I don't know I will be able to send my money to pay my insurance within 20 days, but I will if I can; so, if you can pay it for me, I will remunerate you for so doing." In compliance with these requests the appellant paid the premium in part for the year 1891, as appears from the seventh finding of fact, and also paid it at his own instance for the year 1892, as is shown by the eighth finding. It seems that various transactions occurred between the appellant and insured from the date of the last letter above quoted to July 14, 1893; but the record fails to show any intention of the insured to permanently part with his policy, although the appellant claims to have had it in his possession. Nor does the following letter written by the appellant on the last-named date contain any statement which ought to have indicated to the insured that the assignment was to be an absolute transfer of the insurance policy. It reads as follows: "Brigham City, Utah, July 14, 1893. Mr. L. H. Jones, 226 East F Street, Salt Lake City, Utah—Dear Bro.: In looking over my checks, I find that I paid the premium on your insurance policy for 1891, while you were in California, as well as for the last year,—1892. This makes over $80, with interest on these two payments, as the extent of the lien that I have on the premiums of the policy. Adding to

this the $20 still due and unpaid on the $50 advance I made to bring your books in, together with one or two small advances, besides the money paid to the Herald Company, most of which you will find accounted for in the letter I wrote you at Mendon, on settlement of our account then, will give you the basis for my account, against which, of course, you can get up any counter-claims that you may have. As a matter of business, I don't see that you can have any objection to assign to me your policy to secure the payment of those claims. Of course, if you have good health, I have no doubt but what you will pay them in time, and in case of death I should be entitled first to reimbursement. Of course, as soon as they are paid I agree to assign back to you your policy, and this letter is sufficient evidence of that fact. I want nothing more than to be repaid the money I have advanced on different occasions. Until such time comes, when you can make repayment, I wish to be secured, and this is about the only security you are able at present to give. I can't possibly see, under the circumstances, that you can have any objections to assigning over your policy as B. H. has done his. The number is 363,119. The forms are provided by the company. If you will go down to the office and execute the assignment in duplicate, which the agent will furnish you, and send them up to me, I will arrange at once to send down the money and save the policy from lapsing. Write me a letter by return mail, as the time is short. All the boys are talking about going over to Wellsville at the end of the month for a few days, to pay a visit to father and Howell, and rusticate a little. Could you make arrangements to join us? Yours, truly, R. H. Jones." This letter speaks for itself, and it will be noticed that it contains not even a hint that the writer expected or intended the assignment to be an absolute

transfer, but, on the contrary, it was expressly agreed therein not only that the assignment should be made as security, but also that when the debt which it was to secure was paid the policy should be assigned back to the insured. Whatever may have been the secret intention of the appellant, the writing will not be so construed as to indicate what was neither expressed nor implied. The letter was written but six days before the assignment was made, and three days previous thereto the appellant, under date of July 17, 1893, wrote the insurance company, saying, "Referring to policy No. 363,119, on the life of L. H. Jones, I wish to say that I have paid the premiums on this policy for two years, and hold the policy as security for this and other sums which I have against the insured." This simply shows what was in the mind of the writer respecting security, and confirms his statements, as to what his purpose was, contained in his letter to the insured.

For the purpose of excluding these letters from evidence the appellant has raised numerous questions in his brief concerning the sufficiency of various allegations in the complaint; but, without discussing them separately, we are of the opinion that, while some of the allegations are perhaps not stated in the most artistic manner, there is no such defect as will render the complaint vulnerable to attack after the trial of the cause on its merits without objection. It is true, a demurrer was filed, which was sustained on one point, and the complaint amended accordingly; but it does not appear that when the case was called the appellant urged any objection to its trial on its merits, or on the ground that the case was not at issue. Aside from this, however, we think the complaint was not fatally defective, nor the allegations insufficient to admit the evidence in question.

The appellant also insists that his letter of July 14, 1893, above quoted, was a proposal by mail, requesting an answer by return mail, and that, as he received no answer by return mail, he was entitled to consider the offer as rejected, in the same manner as if it had never been made. But—could it be conceded that it was such an offer—did he treat it as so rejected? All his subsequent acts regarding the procuring of the assignment show the contrary,—show that it was an open and continuing offer. Besides, the appellant simply requested a letter, and not an acceptance of the offer, by return mail. The arguments of appellant on this point, wherein he calls to his aid some of the elementary principles concerning the law of contracts, cannot avail him. No one doubts the legality of the proposition that where a proposal or offer is made to another by letter, and an answer requested by, and limited to, the return mail, and the letter containing the acceptance of the offer is not sent by return mail, the person making the offer may consider it rejected. Nor is the correctness of the authorities cited to this proposition questioned. It suffices to say that neither the proposition nor the authorities cited thereto have any application to this case. A proposal may be withdrawn or revoked at any time before acceptance, but not afterwards. 3 Am. & Eng. Enc. Law, 650. To further show, however, that the offer was never withdrawn or considered rejected, it is but necessary to refer to the testimony of the witness B. H. Jones, who was the agent sent by the appellant to the insured for the express purpose, as it appears, of procuring the assignment. That part of it which is material here reads as follows, and does not appear to be contradicted: "Lewis hesitated in assigning the policy to him, and Ricy came to me, and requested me to go down to Salt Lake and

get him to assign the policy. Ricy said that he was close run; that he had debts to pay, and he had to raise some money, and he had to have my policy assigned to him and Lewis' assigned to him, so that he could raise money. * * * I went down to Salt Lake. I found Lewis in Salt Lake, and told him that I had assigned my policy to Ricy, and that Ricy was close run, that he was in a hard fix, and I thought he ought to assign his. I told him I knew it would be all right. He refused to assign it, and I talked to him several hours. First, he refused to assign it. He had had some trouble with Ricy on some accounts before, and he was afraid of more trouble. And I talked with him a long time, persuading him that Ricy, being our brother, and close run, the way he was, that Lewis ought to make an assignment. Lewis produced this letter that Ricy wrote him,—this letter that has just been introduced, bearing date July 14, 1893; and he asked me if that was sufficient, so he could get it back upon paying the premium. He submitted that letter to me, and I told him that I knew it would be all right; and I told him at that very time that, if anything should ever happen to him, I would see that he (Ricy) did not get the policy, and I asked him, if anything should ever happen to me, to see that Ricy didn't get my policy." Thus, it appears by uncontradicted testimony that at or about the time of the assignment the appellant, through his agent, was urging the insured to make it according to the proposal in the letter, which the insured produced, exhibiting no little anxiety lest he should not get the policy back; but on being assured by the witness, who was a lawyer, that it would be all right, he made the assignment, as follows: "For value received, I hereby assign and transfer unto Ricy H. Jones (creditor), of Brigham City, Utah, the policy of insurance known as 'No.

363,119,' issued by the New York Life Insurance Company upon the life of Lewis H. Jones, of Brigham City, Utah, and all dividend, benefit, and advantage to be had or derived therefrom, subject to the conditions of said policy and to the rules and regulations of the company. Witness my hand and seal this 20th day of July, one thousand eight hundred and ninety-three. L. H. Jones." Thereupon he immediately informed the appellant of the execution of the instrument, and he received and accepted it. From an examination of the record, the conclusion is irresistible that previous to and at the time of the execution of the assignment the understanding and agreement were that it should be made only as security for the debt, and that the appellant so received and accepted it, as a sequence to his own proposal. It is unnecessary to determine the precise meaning of the word "creditor" in the assignment. In the light of the surrounding circumstances, it is quite probable that the word was used to limit the effect of the instrument to security for a debt. However this may be, the proposal was the efficient cause which induced the assignment. No suggestion was ever made—so far as appears from the record—to the insured that, in effect, it should be an absolute transfer. By accepting the assignment, in the absence of any other conditions than those contained in his letter, the appellant reaffirmed the contents of the letter. He asked for, accepted, and since has retained an assignment of the policy, under his own proposal, and now seeks to repudiate and avoid the conditions and limitations contained therein, and under which the transaction occurred. This he cannot do. *Whittemore* v. *Cope*, 11 Utah 344; *Brown* v. *Parsons*, 10 Utah 223; *Clay Co.* v. *Harvey*, 9 Utah 497.

The assignment having been made for the purpose of

securing a creditor, and it having been stipulated in the proposal under which it was made that in the event of the death of the insured the creditor "should be entitled first to reimbursement," the payment of the debt due the appellant was properly ordered to be made out of the fund in the hands of the court, and the balance of the fund to be accounted for to the representatives of the deceased. *Warnock* v. *Davis*, 104 U. S. 775. We find no reversible error in the record. The costs in this case must be taxed against the appellant, including those respecting the additional abstract, which appears to have been necessary to a correct presentation of the case. The judgment is affirmed.

ZANE, C. J., and MINER, J., concur.