## ZOLINTAKIS v. ORFANOS.

### No. 2206.

Circuit Court of Appeals, Tenth Circuit.

March 31, 1941.

H. L. Mulliner and Parnell Black, both of Salt Lake City, Utah (Calvin W. Rawlings and H. E. Wallace, both of Salt Lake City, Utah, on the brief), for appellant.

P. T. Farnsworth, Jr., of Salt Lake City, Utah (Edgar C. Jensen, of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, MURRAH, and WILLIAMS, Circuit Judges.

MURRAH, Circuit Judge.

On January 29, 1934, the Equitable Life Assurance Society of the United States is-

sued and delivered to James Orfanos[1] a policy of insurance on his life in the sum of $7,500, and providing for double indemnity in the event death was caused by accident. He made his brother, Christ Orfanos,[2] beneficiary, but reserved the right to change the beneficiary. On July 23, 1934, at the request of the insured, Peter Zolintakis, whose executor is the appellant here,[3] was made beneficiary under the policy. On July 14, 1935, the insured died by accident.[4] Peter Zolintakis, as beneficiary, filed suit for the face amount of the policy; the trial court directed a verdict in favor of the insurance company and this court reversed the judgment. See 10 Cir., 97 F.2d 583.

After the case was remanded Christ Orfanos, as administrator of the estate of James Orfanos, the insured, intervened, asserting his rights to the proceeds of said policy, contending that appellant's interest in the insurance was limited to the amount of a loan which the appellant had made to the insured, and that the designation of appellant as beneficiary and the delivery of the policy was solely as security for the loan.

The administrator asked the court to declare the appellant trustee for the use and benefit of the estate of said insured of any amount recovered by the appellant from the insurance company in excess of the debt of insured to beneficiary appellant. The administrator further asked that the estate be declared the real beneficiary in the policy of insurance and for judgment against the company in the sum of $15,000.00, less the sum owing to the appellant on the loan.

The appellant beneficiary moved to dismiss the petition of intervention. The motion was denied and the appellant answered the complaint in intervention by asserting that since the 23rd day of July, 1935, the appellant, Peter Zolintakis, had been the legal and lawful beneficiary of the policy of insurance and entitled to the proceeds thereof, and asked that the intervening administrator take nothing.

The case was tried and the insurance company again prevailed. The appellant and intervening administrator appealed. This Court reversed solely on the question of the liability of the insurance company. See 10 Cir., 108 F.2d 902. Thereafter, the insurance company paid the face amount of the policy, plus interest, into court and this case is between the appellant, as designated beneficiary in the policy, and the intervening administrator, as appellee.

The appellee contends that the subject matter of this suit was adjudicated on the second appeal (10 Cir., 108 F.2d 902), and in effect says that the issues raised between the parties here were determined by the trial court by its former judgment; that this is in effect a retrial of the facts in this case.

With this contention we cannot agree. An examination of the trial court's judgment, and the decision of this court on appeal, conclusively shows that although the controversy between the administrator and the beneficiary was drawn in issue, the trial court "reserved" the question and did not decide the issue which now constitutes the subject matter of this suit. This is evidenced by the judgment of the court denying recovery to either the beneficiary or the administrator and a judgment for the defendant insurance company. Lack of adjudication is further shown by the retrial of the case pursuant to remand (10 Cir., 108 F.2d 902), and the judgment of the trial court, which is the basis of this appeal.

We conclude that the issues between the administrator and beneficiary have not been adjudicated and are presented here for our decision.

The pertinent facts show that the insured was an itinerant unmarried person of Greek nationality. At the time the policy of insurance was issued to him he was not steadily employed, had no substantial income and at the time of his death was living in poverty. The policy was sold to him by a Greek insurance salesman, who was the son-in-law of the appellant beneficiary. The beneficiary was a Greek and insured had lived at his home from time to time as a friend. Their social contact appears to have been somewhat close.

---

[1] Hereinafter called insured.

[2] Hereinafter called administrator. (During pendency of this suit Christ Orfanos died and his administrator was substituted in this suit.)

[3] Hereinafter called beneficiary. (During pendency of this suit Peter Zolintakis died and his executor was substituted in this suit.)

[4] See Zolintakis v. Equitable Life Assur. Soc., 10 Cir., 97 F.2d 583 and Id., 10 Cir., 108 F.2d 902.

The policy of insurance was large ($7,-500 and $15,000 for accidental death), when considered in the light of the financial ability of insured to pay the premiums thereon. Before the first semi-annual premium was due in July, 1934, the insured sought to borrow money from his brother who was at that time beneficiary, and living in the State of New Mexico. His brother refused to advance the money. He then unsuccessfully sought to borrow the money from the agent to pay the premium. He approached the appellant, who did advance the money to pay the premium in July, 1934, in the sum of $137.10.

Soon after this advance, at the request of the insured, the appellant was designated as beneficiary in the policy, and the policy of insurance was delivered to appellant beneficiary. In January, 1935, again at the request of the insured, the appellant advanced a like sum to pay the semi-annual premium then due.

The exact understanding and agreement between insured and appellant before, and at the time, the money was advanced to pay the first premium and pursuant to which the appellant was designated beneficiary, and the manner and purpose of the designation of the appellant as beneficiary, are debatable.

It is fairly conclusive that the insured contemplated lapsing the policy. The appellant sought and obtained advice from his son-in-law, who had sold the policy, concerning how he could be protected in the event of insured's death, if he advanced the money to pay the premiums. He learned that if he were made beneficiary in the policy he would be entitled to the proceeds of the policy in event of insured's death. After this understanding was verified by the insured he advanced the money and the premiums were paid.

Appellant testified on three different occasions concerning this transaction. He could not speak English and his testimony was adduced through an interpreter. He testified first that the money advanced was a "loan", but the interpreter testified that in translating the questions and answers he made no fine distinction in the use of the word "loan". At other times he testified, through the interpreter, that "I gave him the money to help him out." Obviously, it was the purpose of counsel for the administrator to use the word "loan" in its technical sense.

Appellant further testified: "He told me he needed the money to pay the insurance and that is why I give him the money, and make me the beneficiary." Whether the money advanced was considered a "loan" or "money to help him out", it is certain it was advanced for the purpose of paying the premiums on the policy, with the understanding that the appellant should be made the beneficiary in the policy. If there was an agreement to repay the money advanced there was no time fixed for its repayment, but in the event of repayment the policy would be redelivered to insured. The conduct of the parties conclusively shows these facts. When the matter was mentioned in conversation between appellant and insured concerning the money advanced, the insured stated in substance: "Why should you worry, if I die you get the money."

In the course of his opinion the trial court significantly stated: " * * * Now, if the policy were returned, of course it is possible that Orfanos (insured) would have continued him as the beneficiary entitled to the insurance stated in the policy in case of death, but the question is: was he made beneficiary as such permanently or was it in respect to the loan that was then made?"

The trial court held that the money advanced was a loan; that the appellant was designated beneficiary, and the policy delivered to secure the payment of the loan, and "under that state of facts the law would raise the question of trusteeship." The court further held that the appellant was trustee for the proceeds of the policy in excess of the amount of the loan in the sum of $407.61.

In our view, the result does not turn on the question of whether or not there was a loan by the appellant beneficiary to the insured, in consideration for which the appellant was made beneficiary, but rather does the existence of the debtor-creditor relationship, created by the loan, limit the otherwise unqualified and vested right of the beneficiary to the proceeds of the policy upon maturity of the contract.

The answer to this question hinges upon the purposes and intent of the insured in designating the appellant as beneficiary and delivering the policy to him.

It is pertinent to note that from the underlying facts the insured was not prompted to take out this policy of insurance for

the purpose of discharging his obligations to dependents—he had none. The primary incentive was his personal welfare. So in considering the question of the beneficiary's right to take under the policy we are not the guardians of widows and orphans. There are no equities to balance the scales of justice.

██ ██ The administrator admits the indubitable right of the insured to change the beneficiary in the policy at will; that the intention of the insured as to who will be the beneficiary, when ascertained, must be given effect. Neither the former beneficiary, nor this beneficiary, had any vested right in the policy, but only an expectancy. Upon maturity of the contract the beneficiary therein became vested with a right to the proceeds of the policy and one who denies the right of a named beneficiary to receive the proceeds of a policy has the burden of showing that the beneficiary is not entitled to the fund. Couch on Insurance, Vol. 8, Section 2189, page 7073 and Young v. Hipple, 273 Pa. 439, 117 A. 185, 25 A.L.R. 1541.

The policy does not mention the administrator as beneficiary and he admits that his rights "arise out of the transaction between the insured and named beneficiary" (appellant).

The contention of the administrator appellee must rest upon the premise that because the appellant advanced money in the form of a loan for the payment of premiums on the policy, the designation of the appellant as beneficiary was solely as security for the "loan"; that the loan itself by operation of law created a resultant trust by the terms of which it was agreed between parties that in the event of insured's death while appellant was the designated beneficiary he would be the trustee for the benefit of insured's estate.

If a loan of money in these circumstances is sufficient to establish a trust in the manner and to the extent herein contended, the judgment of the trial court must stand. It is our duty to consider the legal effect of the transactions between the insured and appellant beneficiary, which the

trial court found resulted in a debtor-creditor relationship.

We will assume without more, for the purpose of our decision, that a debtor-creditor relationship existed between insured and beneficiary.

The cases which bear upon the question, and from which we must fashion a rule to govern these facts, present a variation of reason and logic but all are based upon and controlled by the transcendent purposes for which the contract of insurance was promulgated.

We are cited many cases by the appellant, which uphold the right of the beneficiary-creditor of the insured to the entire proceeds of the policy. Many of these cases cited are annotated in 115 A.L.R. page 741.[5]

These cases treat both designated beneficiaries and assignees of the policy of the insured. In the case before us, we think the appellant beneficiary was both assignee and beneficiary, because he was the designated beneficiary and the policy was delivered to him.

Noteworthy of the cases cited by the appellant is Amick v. Butler, supra. In this case, by agreement of the parties, a policy of insurance was issued on the life of one Frazee in the sum of $2,000. Amick was designated in the application and certificate of insurance as a creditor for the sum of $250. He was made the beneficiary on condition and by agreement, that Amick would pay all expenses incident to the issuance of the policy and the annual premium assessments, which he did. It was orally agreed that if at any time thereafter Frazee should pay his indebtedness, the cost of the issuance, and premiums on the policy, Amick would turn over the policy to the insured. Frazee died. After deducting the full amount of the indebtedness, the sum advanced for cost of issuing the insurance, and premiums thereon, there remained the sum of $1,259.58, which the administrator of the insured demanded from Amick.

The court, in denying the claim, stated: "* * * It was entirely at the option of

[5] Kentucky Life & Accident Ins. Co. v. Hamilton, 6 Cir., 63 F. 93; Fehr v. Cawthon, 6 Cir., 293 F. 152 (writ of certiorari denied in 263 U.S. 720, 44 S. Ct. 229, 68 L.Ed. 524); Amick v. Butler, 111 Ind. 578, 12 N.E. 518, 60 Am. Rep. 722; Pherigo v. L. Gutman & Son, 150 Ky. 779, 150 S.W. 1022; Rittler v. Smith, 70 Md. 261, 16 A. 890, 2 L.R.A. 844; Haberfeld v. Mayer, 256 Pa. 151, 100 A. 587; Prudential Ins. Co. v. Tutalo, 55 R.I. 160, 178 A. 859; Brown v. Freeman, 4 De G. & S. 444, 64 Eng.Reprint, 906; and Bruce v. Garden, L.R. 5 Ch. (Eng.) 32.

the debtor whether or not he would reimburse the creditor for the sums expended in procuring the insurance. Whatever the creditor might have done in respect to the collection of this debt, it was beyond his power to compel the insured to reimburse him for his advances in procuring and maintaining the policy. The debtor had not agreed to repay advances voluntarily made. The advances having been made for the creditor's own benefit, he had no remedy against the debtor, or his legal representatives, to recover them. * * * The right to the policy, and to the benefits to be derived therefrom, were absolute in the beneficiary until both the debt and the advances were paid, even conceding that the oral agreement referred to would have been enforceable in the life-time of the insured. The beneficiary in a life policy * * * may enforce payment for the full amount, notwithstanding the debtor on whose life it runs may have paid the debt." [111 Ind. 578, 12 N.E. 521, 60 Am. Rep. 722.]

The reasoning in this case approaches, but does not quite reach our question. There is grave doubt whether or not the appellant beneficiary could have collected from the insured the sums advanced in payment of the premium. Indeed, based upon the nebulous testimony before us, it is extremely doubtful, but in the Amick case, the expressed dominant purpose of the policy of insurance was to insure the payment of the debt. The court observed that if the debtor took a policy on his own life at his own expense, pledging the policy as security for an existing debt, the holder, whether by assignment or otherwise, who receives the entire proceeds, will be regarded as a trustee of the representative of the insured for the amount received, less the amount of his debt, or the sum advanced on the policy.

Our case does not fall strictly within the facts of Fehr v. Cawthon, supra, wherein the creditor was permitted to insure the life of the debtor and whereby the issuance of the policy cancelled the debt. In our case, if a debt did exist it was not cancelled by the designation of the appellant as beneficiary, unless it can be said that there was never any intention that the money advanced should be repaid. This is contrary to the findings below. See, also, Kentucky Life & Accident Insurance Company v. Hamilton, supra; Haberfeld v. Mayer, supra; Rittler v. Smith, supra;

Potvin v. Prudential Ins. Co., 225 Mass. 247, 114 N.E. 292, and Carnes v. Franklin Life Ins. Co., 5 Cir., 81 F.2d 800.

These cases support the right of the creditor-beneficiary to the entire proceeds of the policy, where by the terms of the policy itself, or other evidence, a clear intent is shown.

Authorities which limit the creditor-beneficiary's right to the proceeds of the policy to the extent of the debt or obligation, likewise turn upon an intent expressed in the policy or an intent shown by express contract; by conduct of the parties or other cogent reasons collateral to the terms and provisions of the policy. McDonald v. Humphries, 56 Ark. 63, 19 S.W. 234; Tateum v. Ross, 150 Mass. 440, 23 N.E. 230; Aetna Life Ins. Co. v. Mason, D.C., 30 F. 2d 715; Bosma v. Evans, 96 Colo. 504, 44 P.2d 511; Mercer National Bank of Harrodsburg v. White's Executor, 236 Ky. 128, 32 S.W.2d 734; Dunn v. Second National Bank of Houston, 131 Tex. 198, 113 S.W.2d 165, 115 A.L.R. 730 and Couch on Insurance, Vol. 2, Section 354.

Jones v. New York Life Insurance Company, 15 Utah 522, 50 P. 620, 621, presented the question: "Was the assignment of this policy in legal effect an absolute sale and transfer?" The insured owed his brother an antecedent debt. The brother asked the creditor to pay the premiums on his life insurance and expressly promised in writing to reimburse him. The creditor brother paid the premiums and then wrote a letter asking that the policy of insurance be assigned to him. He stated: "I have no doubt but what you will pay them in time, and in case of death I should be entitled first to reimbursement. Of course, as soon as they are paid I agree to assign back to you your policy, and this letter is sufficient evidence of that fact. I want nothing more than to be repaid the money I have advanced on different occasions." The debtor reluctantly assigned the policies in writing. The policy became a matured contract.

The court, in holding that the creditor was assignee of the policy for the amount of the loan and trustee of the estate of the balance, stated: "The assignment having been made for the purpose of securing a creditor, and it having been stipulated in the proposal under which it was made that in the event of the death of the insured the creditor 'should be entitled first to reimbursement,' the payment of the

debt due the appellant was properly ordered to be made out of the fund in the hands of the court, and the balance of the fund to be accounted for to the representatives of the deceased."

The courts have held, in conformity with the decisions cited, that by express and implicit understanding the assignee of a policy can be constituted the trustee of the insured's representatives for the amount of the policy in excess of the loan, security for which it was given.

■ It is manifest that a creditor of the insured may be the designated beneficiary under the policy and entitled to the entire proceeds of the same. Likewise, the creditor may be the designated beneficiary of the policy for a limited purpose and the limited purpose having been satisfactorily shown, he will become trustee of the proceeds in excess of the debt.

In each of the cases, the purpose is controlling and it is manifest either by the terms and conditions of the policy itself, or by clear and unmistakable proof which showed an intention of the insured to limit the beneficiary to the amount of the debt.

■ It follows, that absent a clear, convincing and cogent expression on the part of the insured to the contrary, the designated beneficiary in a policy of insurance is entitled to the entire proceeds on maturity of the contract. There are good and compelling reasons to hold that a named beneficiary is entitled to the proceeds of a policy upon maturity, else the fundamental purposes of life insurance would be frustrated.

■ ■ It is clear, therefore, that a debtor-creditor relationship created by a loan of money from the beneficiary to the insured, creates no presumption of a limited right of recovery on the part of the designated beneficiary; but, where under the terms of the policy reserving the right to change the beneficiary, in the absence of any compelling equities of those claiming contra to the designated beneficiary, it will be presumed that it was the intention of the insured to leave the entire proceeds of the policy to the designated beneficiary.

■ One relying upon extraneous evidence to prove not only a debt in the form of a loan between insured and the beneficiary, but that it was the intention of the insured debtor to establish a trust relationship between the beneficiary and insured's representatives, who were not mentioned in the policy, has the burden of overcoming the contra presumption by clear and convincing proof. Skeen v. Marriott, 22 Utah 73, 61 P. 296; Fee v. Wells, 65 Colo. 348, 176 P. 829; Elliott v. Gordon, 10 Cir., 70 F.2d 9; Walker v. Tracy Loan & Trust Co., 83 Utah 576, 33 P.2d 177; and, Novosel v. Sun Life Assurance Co. of Canada, 49 Wyo. 422, 55 P.2d 302.

■ Courts are reluctant to enforce an alleged parol trust in personal property and there is perhaps no better established doctrine than the one which requires a high degree of proof in order to establish the trust by parol evidence. 23 A.L.R. 1500.

This rule obtains in Utah. In Skeen v. Marriott, supra [22 Utah 73, 61 P. 300], the court stated: "So it is essential that the language employed in the creation of a trust should be such as to leave no room for reasonable controversy as to the intention of the donor. * * * To fasten a trust upon personalty by parol, the same as where a trust of realty is created, the language used must amount to a clear and explicit declaration of trust. * * * It is absolutely essential that the evidence to establish a trust resting on parol should be clear, unequivocal, and explicit, and not conflicting in character as to material points; for, if the terms and object of such a trust be left in doubt or confusion, a court cannot enforce it." Novosel v. Sun Life Assurance Co. of Canada, supra; Walker v. Tracy Loan & Trust Co., supra, and Elliott v. Gordon, supra.

In Fee v. Wells, 65 Colo. 348, 176 P. 829, 832, the court stated: " * * * Evidence to establish an oral express trust for the use of one, other than the beneficiary, in the proceeds of a life insurance policy, without change of beneficiary, should be equally as strong as parol evidence to establish a resulting trust in real property * * *. The proof must be beyond a reasonable doubt and the language used must be clear and explicit as to the declaration or creation of the trust." Compare Bosma v. Evans, supra.

■ We hold that the extraneous evidence here, which at most creates a debtor-creditor relationship between insured and the beneficiary, is entirely insufficient to raise a trust in behalf of the representatives of insured's estate.

The cause is reversed and remanded with directions to enter judgment for appellant.