340 F.2d 469
 AMERICAN CASUALTY COMPANY, Appellant,
v.
Mable ROSE, individually, and Mable Rose, as Guardian of Ronald, Cheryle, Carol Lee, Verl, Sarah and Barbara Rose, minor children of Mable Rose and Verl Rose, and Mable Rose, as Administratrix of the Estate of Verl Rose, Deceased, Appellees.
 No. 7700.
 United States Court of Appeals Tenth Circuit.
 November 25, 1964.
 
 Ernest F. Baldwin, Jr., of Hanson & Baldwin, Salt Lake City, Utah, for appellant.
 Bernard M. Tanner, Salt Lake City, Utah (O. H. Matthews, Salt Lake City, Utah, with him on the brief), for appellees.
 Before PHILLIPS, PICKETT and HILL, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 On February 2, 1962 the defendant, American Casualty Company, upon the payment of the required premium, issued and delivered to Verl Rose a 30-day policy of insurance in the amount of $50,000 for accidental death. The named beneficiary was John M. King. Rose was accidentally killed while the policy was in effect. The insurance company denied liability, and while an action by King was pending in an Illinois State court, a settlement was agreed upon whereby King executed a release of further liability on the policy upon payment of $24,000. Thereafter this action was brought in the United States District Court for the District of Utah by the wife and children of Rose, alleging that King had been designated beneficiary on the policy proceeds as trustee for the benefit of Rose's family, and that the insurance money belonged to them. This is an appeal from a judgment against the insurance company for $26,000, the unpaid balance of the policy.
 
 
 2
 The facts are not in dispute. Early in 1961 Verl Rose, an automobile stunt performer, left his family in Utah and went to Illinois, where he was employed by John M. King as a performer in an "Auto Thrill Circus." After leaving Utah, Rose did not contribute to the support of his family, but there was evidence that he retained a family interest and did not intend to completely desert it.[1]
 
 
 3
 The trial court found that King had no insurable interest in the life of Rose except to the extent of an indebtedness due King from Rose, and that any proceeds of the policy paid to King over and above the amount of the indebtedness would be received by him as constructive trustee for the benefit of Mrs. Rose and the minor children. The court also found that when the insurance policy was purchased, Rose intended to provide for his wife and children in the event of his accidental death, and did not intend that King should benefit from the proceeds of the policy in excess of the amount due and owing him by the insured. The court concluded that King did not have authority to compromise the claim for the amount due on the policy.
 
 
 4
 There was evidence that when Rose purchased the policy, he was indebted to King in the sum of one or two thousand dollars, and we assume that such an indebtedness existed. There was also testimony of a former employee of King to the effect that, several weeks after Rose was killed, he had a number of conversations with King concerning Rose and his family and the insurance. He testified that during these conversations King said that Rose had requested him to act as administrator of his estate, and that King "wanted to see that these children were taken care of and that they did not want for anything, and that he was going to see that they had all their clothes and their education * * and he would take a small percentage of this insurance for himself for his part in seeing that it was taken care of." King was named a defendant in this case, but was not served, and his testimony was never taken.[2]
 
 
 5
 Rose had an insurable interest in his own life, and in the absence of statute, was free to take out insurance on it and to name anyone he saw fit as beneficiary, regardless of whether the beneficiary had an insurable interest in the insured. 29 Am.Jur. ¶ 472, p. 799; Ducros v. C. I. R., 6 Cir., 272 F.2d 49; Aetna Life Ins. Co. v. Patton, D.C.S.D. Ill., 176 F.Supp. 368; Wolen v. Metropolitan Life Ins. Co., 287 Ill.App. 415, 5 N.E.2d 249;[3] Bloomington Mut. Life & Benefit Ass'n v. Blue, 120 Ill. 121, 11 N.E. 331. The policy designated King as beneficiary without any limitation. Whatever rights the wife and children of the insured have in the proceeds of the policy must flow from the relationship and transactions between Rose and King. Zolintakis v. Orfanos, 10 Cir., 119 F.2d 571. King had no insurable interest in Rose over and above the indebtedness, but a debtor-creditor relationship between the insured and the beneficiary creates no presumption that the right to recover the policy proceeds is limited, nor does it of itself prohibit a beneficiary from a full recovery. In Zolintakis v. Orfanos, supra, at 577, the court said:
 
 
 6
 "The courts have held, in conformity with the decisions cited, that by express and implicit understanding the assignee of a policy can be constituted the trustee of the insured's representatives for the amount of the policy in excess of the loan, security for which it was given.
 
 
 7
 "It is manifest that a creditor of the insured may be designated beneficiary under the policy and entitled to the entire proceeds of the same. Likewise, the creditor may be the designated beneficiary of the policy for a limited purpose and the limited purpose having been satisfactorily shown, he will become trustee of the proceeds in excess of the debt.
 
 
 8
 "In each of the cases, the purpose is controlling and it is manifest either by the terms and conditions of the policy itself, or by clear and unmistakable proof which showed an intention of the insured to limit the beneficiary to the amount of the debt."
 
 
 9
 Anyone attacking the right of a named beneficiary to receive the proceeds of an insurance policy has the burden of proving that the beneficiary is not entitled thereto. Zolintakis v. Orfanos, supra; Aetna Life Ins. Co. v. Messier, D.C.M.D.Pa., 173 F.Supp. 90; Aetna Life Ins. Co. v. Patton, supra.
 
 
 10
 This is not a case of unjust enrichment. The record is wholly devoid of any evidence from which it could be inferred that King was named beneficiary of the policy to secure a loan, or that King was not to receive the entire proceeds of the policy.[4] The letter written by Rose to his wife mentioned the policy, and stated that it would cover Rose's future medical expenses in case he were again hospitalized. It also indicated that his earnings in the future might permit him to contribute something to the support of his family. Rose did not advise his wife that King had been named beneficiary of the policy, or that she was to participate in the proceeds if the policy matured.
 
 
 11
 The statements of King to another employee, assuming they are admissible, do not relate to the relationship between King and Rose with reference to the policy, but merely state that King intended to assist the children of Rose. Gratuitous intentions such as this, even when based on strong moral obligations, often disappear in the absence of legal requirements. Although the court was convinced that Rose did not intend "to cut his wife and six little children off and give a really magnificant sum of money, $50,000, to his employer", and so found, there is no evidence of any kind in the record to support the finding. Courts cannot determine a case on sympathy for a widow and children for whom a wayward husband and father has failed to provide.
 
 
 12
 Reversed and remanded with instructions to dismiss the action.
 
 
 
 Notes:
 
 
 [1]
 Shortly after the $50,000 policy was acquired, Rose wrote this letter to his wife:
 "Dear Mable,
 "I haven't heard from you in a very long time and it makes me feel very bad.
 "I know you are very much-put out with me. I knew you were hurt that afternoon in May I left for Ottawa. I have written to you several times and and you have never made an attempt to ans. I know the car needs plates and possably Ins. (If you still have it). I would be more than glad to do that fore you also I would realy like to know the name and birth date of Our Youngest. Mabel, confidential I am planning on coming down and see you and the kids 1962 at the end of this mo. Will you tell me will it be safe or will the law pick me up? If you ans. this right away and send it to 1941 Champlain St. I can receive it before I get on my way. I have many things to talk over with you, and explaining about the past and the future.
 "I'm coming home anyway but you could make it a lot easier if you would ans. this card.
 "I wish you would have written me earlier about the baby. I haven't made any money this Winter but if you needed it I could have got it from John. I got my Income tax statement from John and it ran only 1,800.00 so that wasn't to good but I spent about 2½ mos in the hospital since I have been gone. It won't happen that way again because I carry a $50,000.00 policy with med. & life but the future fore me this year starting Mar. 5, 1962 looks very good & prospras.
 "Always
 "Verl" (1962).
 
 
 [2]
 At the close of all the evidence, the court stated that this testimony as to King's conversation with another employee was hearsay as to the Insurance Company, and was not to be considered
 
 
 [3]
 The policy in question was purchased in Illinois, and the parties agree that its construction is to be determined by Illinois law
 
 
 [4]
 The policy referred to King as a "Friend"