CHARLOTTE E. PATTEN, Respondent, *v.* UNITED LIFE AND ACCIDENT INSURANCE ASSOCIATION, Appellant.

*It seems*, the provision of the Code of Civil Procedure (§ 834) prohibiting a physician from disclosing any information acquired by him while attending a patient in a professional capacity, which was necessary to enable him to act in that capacity, does not render it incompetent for a physician to testify that he attended a person in a professional capacity, and that the patient was sick, or from giving the dates and number of times of attendance.

Defendant, an assessment insurance company, issued a policy upon the life of P.  It was provided therein that a failure to comply with the rules of the association as to payment of assessments would render the policy void.  P. failed to pay an assessment, and for the purpose of being reinstated as a member as authorized by the rules, executed a certificate to the effect that he was in good health at the time.  P. died within a month thereafter.  In an action upon the policy defendant, for the purpose of proving the falsity of the certificate, offered to prove by a physician that he attended upon P. as a patient during his last illness,

and that he was sick, and also the date when he was first consulted. This was objected to, and excluded but not on the ground that the testimony was incompetent under said provision of the Code. *Held*, error.

(Argued May 25, 1892; decided June 7, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 23, 1891, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Harry Wilber* for appellant. The sole purpose of the questions propounded by defendant to the physician was to ascertain the dates of his visits to his patient, and the exclusion of his testimony was error. (*Breisenmeister* v. *Supreme Lodge*, 19 Ins. Rep. 889; Code Civ. Pro. § 834.) The health report should have been admitted in evidence. (Code Civ. Pro. § 944; *McKinny* v. *R. R. Co.*, 104 N. Y. 352.)

*J. A. Shoudy* for respondent. There was no error committed by the trial judge in the exclusion of the testimony of Dr. Perry. (Code Civ. Pro. § 834; *Feeney* v. *L. I. R. R. Co.*, 116 N. Y. 380; *Gratton* v. *M. L. Ins. Co.*, 80 id. 281, 297; *Edington* v. *M. L. Ins. Co.*, 67 id. 185, 194.) There was no error in the exclusion of the record of the health department of the District of Columbia. (Code Civ. Pro. § 834.)

EARL, Ch. J. This action was brought on a policy of insurance upon the life of James Patten. The defendant is an assessment insurance company, and the policy by its terms was made payable to the plaintiff. It was provided in the policy that a failure to comply with the rules of the association as to the payment of assessments should render the policy void. Patten had failed to pay an assessment as required by the rules of the association, and for such failure his policy had lapsed and become void prior to the 19th day of April, 1888. On

that day, for the purpose of being reinstated as a member of the association, he executed a certificate certifying that he was in good health, and that certificate was sent to and reached the defendant on the 23d day of April, 1888. Patten died on the sixteenth day of May thereafter, and the sole defense to this action which is now relied upon is that the certificate as to his health on the nineteenth day of April was untrue.

To defeat the action it was incumbent upon the defendant to show that at the date of the certificate Patten was not in good health.

Prior to the trial the evidence of Dr. Perry, of Washington, D. C., was taken at the instance of the defendant, under a commission issued for that purpose, and upon the trial it attempted to read in evidence the doctor's examination taken under the commission. The court, upon the plaintiff's objection, refused to permit the answers to certain of the intergatories to be read in evidence, and such refusals are now the defendant's chief cause of complaint. In answer to the first, second, third and fourth interrogatories, Dr. Perry stated that he was a physician and that his place of residence was in Washington; that he knew Patten and that his acquaintance with him continued until his death on May 16, 1888. The interrogatories overruled by the court and the objections made to them are as follows: "Did you attend Jarvis Patten professionally in his last illness?" "Did you continue in attendance upon Jarvis Patten until his death?" "When were you first applied to in reference to the last illness of Jarvis Patten; please give the exact date and time, whether day or night?" "Where did you first see Jarvis Patten concerning his last illness—at your office or at his residence or elsewhere?" These interrogatories were objected to by plaintiff's counsel as calling for a conclusion and as incompetent and irrelevant.

The following interrogatories were objected to generally, no grounds being stated: "How many times did you attend him professionally intermediate the occasion you first saw him in relation to his health as you have testified and the death of Jarvis Patten. Please give the dates and hours of your attend-

ance as far as you are able?" "How many of these attendances were at your office and how many at the house of Jarvis. Patten?" "Please give the dates of such attendances at your office?" "Please give the dates of such attendances at the house of Jarvis Patten?"

These interrogatories do not appear to have been objected to under section 834 of the Code, and it was not objected that the doctor was not competent to answer the questions. The defendant certainly had the right to show, if it could, by some witness that Patten was not in good health at the time he signed the certificate, and if it could have shown by any witness that at or about that time he was in charge of a physician, it would have gone a great way to show the untruthfulness of the certificate and to establish its defense. Patten died in less than a month after executing the certificate certifying that he was in good health, and his health during the whole of that time was a pertinent matter of inquiry and investigation, and the defendant had the right to show its condition by the doctor, unless his evidence was objected to and excluded under section 834 of the Code. But if we assume that the trial judge, in excluding the evidence, had in mind section 834 and intended to exclude it on account of the prohibition therein contained, the rulings were, nevertheless, erroneous. At the time the rulings were made, it did not appear that the information sought to be obtained from the doctor was acquired by him while attending Patten as a patient, or that the information sought to be obtained from him was necessary in order to enable him to act in his professional capacity. There is nothing in section 834 which prohibited the defendant from showing that Patten was the patient of the doctor; that he attended him as a patient, and that he was sick. Nor is there anything in that section which prohibited the doctor from testifying whether he was called upon to attend Patten professionally before or after the date of the certificate, or to tell how many times he attended him, whether daily or hourly, from the nineteenth day of April to the sixteenth day of May. If the defendant had been per-

mitted to read the answers to these pertinent interrogatories, it is probable that it could have proved facts enough for submission to the jury as to the bad health of Patten at the time he made the certificate. It is no answer to the defendant's claim of error in these rulings that it does not appear what the answers to the interrogatories were. It was not bound to insert in the record answers which it was not permitted to read, and the interrogatories being competent, we cannot assume that material and relevant answers were not given by the witness in response to them. We are bound to assume that the excluded answers were harmful to the plaintiff, as the counsel would not otherwise have objected to them.

After the trial judge had refused to allow the defendant's counsel to read the answers to the interrogatories specified, plaintiff's counsel read the first cross-interrogatory and the answer thereto as follows: "State whether or not you are a person duly authorized to practice physic or surgery?" And the witness answered: "I am duly authorized to practice physic and surgery." And he read the second cross-interrogatory and the answer thereto as follows: "If you shall have stated in answer to the fifth direct interrogatory the cause of death of Jarvis Patten, state now further whether you did not acquire such information in attending said Patten as a patient in a professional capacity and whether such information was not necessary to enable you to act in that capacity?" And the witness answered: "I did acquire such information in attending said Jarvis Patten in a professional capacity and such information was necessary to enable me to act in such capacity." Defendant's counsel had not read the fifth direct interrogatory, nor the answer thereto, and had given no evidence by the doctor as to the cause of Patten's death, and, therefore, the second cross-interrogatory and the answer thereto were wholly immaterial. There was no necessity whatever for the plaintiff to show that the doctor acquired his information as to the cause of Patten's death while attending him in a professional capacity, and that such information was necessary to enable him to act in such capacity, as he had not previously given any evidence

as to the cause of Patten's death, so far as this record discloses. If we should assume that the doctor obtained information of the nature of Patten's sickness while attending him professionally and that such information was necessary to enable him to act in his professional capacity, such assumption would not justify the exclusion of the evidence called for by the direct interrogatories above specified, because none of them called for the nature of the disease with which he was afflicted.

After the exclusion of the defendant's interrogatories put to the doctor, it called as a witness a daughter of the plaintiff and attempted to show by her when the illness of her father commenced, and that it existed at the time the certificate was made. It also attempted to show by her when the physician was first called to attend her father, and it was unable to show by her that her father's illness commenced prior to the date of the certificate, or that the doctor had attended him prior to the 5th day of May. But the defendant was not bound by her evidence. We may assume that she was a hostile witness, largely interested in the success of this action brought by her mother. We may also assume that the defendant was forced to call her because of the exclusion of the evidence taken under the commission, and hence that the exclusion of that evidence was damaging to it. Rules of evidence play an important part in the administration of justice. They should be reasonably and consistently enforced so as to give certainty to the law which protects the rights of parties. We cannot, without doing injustice to the defendant, ignore its exceptions now brought to our attention, and for the errors which they point out, the judgment should be reversed, and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.