(30 App. Div. 5)

### BECKER v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Third Department.   November 16, 1904.)

**1. WITNESSES—PRIVILEGED COMMUNICATIONS.**

Code Civ. Proc. § 834, excluding from evidence privileged communications between physician and patient, does not prevent a physician from testifying that he attended a person professionally, as to how long the person was confined to his house, and the number and dates of his calls.

**2. EXAMINATION OF WITNESSES—HYPOTHETICAL QUESTIONS.**

Where there is some evidence to establish all of the facts assumed by a hypothetical question, it is error to exclude the answer to such question

Appeal from Trial Term.

Action on a policy of insurance by Martha Becker against the Metropolitan Life Insurance Company.   From a judgment for plaintiff and an order denying a motion for a new trial (87 N. Y. Supp. 980), defendant appeals.   Reversed.

The plaintiff sues the defending company to recover upon a policy of life insurance upon the life of her husband.   The policy was issued on April 20, 1900, and the insured died on April 3, 1902.

The defense is that several of the warranties made in the application for the policy by the deceased were false.   On the trial the plaintiff proved the contract, made the usual proofs of death, and rested.   In the proofs of death, which were made out on blanks furnished by the defendant, and which consisted of written answers to various printed questions, the plaintiff in reply to the inquiry, "What sickness previous to the last one did deceased have and when?" stated, viz.: "Not considered seriously ill.   Had a fainting spell at R. R. shop in 1899, caused by seeing a boy killed at yards.   Walked home, and not confined to bed."   And in reply to the inquiry, "For what disease or diseases have you at any time attended deceased prior to last illness, and what was their duration?" the physician whose certificate she furnished to the company answered:

"Dates of Attendance.

| Day. | Month. | Year. | Diseases. | Duration of Diseases. |
|---|---|---|---|---|
| 30 | Oct. | 1899 | Cerebral Apoplexy. (Very slight.) | 12 days." |

These statements, with many others, were signed and sworn to by the plaintiff and her physician, Dr. Roper, were furnished to the company, and were put in evidence upon the trial by her.

---

¶ 1. See Witnesses, vol. 50, Cent. Dig. § 773.

When the plaintiff rested her case the defendant moved for a nonsuit substantially on the ground that the proofs so made by her showed that the deceased, on October 30, 1899, before he was insured, had an attack of dizziness or vertigo, and of apoplexy, and was treated by Dr. Roper for the same; thus showing that the statements made by the deceased to the effect that he had had none of such ailments, nor been treated by a physician, were false and deceiving. The trial judge thereupon held that, in the absence of further proofs, such defense was established; but he allowed the plaintiff to open her case, and give evidence to show that the facts so stated by herself and Dr. Roper were not true. The trial then proceeded upon those issues, and the court instructed the jury that if the deceased did on October 30, 1899, have dizziness or vertigo and apoplexy, or was otherwise guilty of a breach of any of the other warranties contained in his application, the plaintiff could not recover. But if his illness on October 30, 1899, was not apoplexy, and he had never had any illness since childhood which was substantial in its effect, and if his answers to the several questions were "truthful in substance," then the plaintiff might recover. The jury found a verdict for the plaintiff for the amount of the policy, and from the judgment entered thereon, and from an order denying a new trial on the minutes, this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Martin T. Nachtmann, for appellant.

William H. Sullivan (Hubert C. Stratton, of counsel), for respondent.

PARKER, P. J. The deceased had, at the time he took out the policy upon which this action is brought, warranted among other things that he had never had dizziness or vertigo, nor apoplexy; that he had not been sick since childhood, nor confined to the house by any illness since then; and that he had not consulted any physician. The defense was that all of such warranties were false. Concededly on October 30, 1899, he had had an attack of some sort; and the principal question submitted to the jury was, what was the condition of the deceased at that time—was his illness of such a substantial nature as to amount to a breach of the warranty given?

In her proofs of death, which the plaintiff furnished to the defendant, and which she herself put in evidence on the trial, was her own statement that the deceased had a fainting spell at the shops on that day, and the statement of Dr. Roper, her physician, that he on that occasion treated the deceased for cerebral apoplexy, and that the attack lasted 12 days. Such "proofs" were evidence of the facts therein stated, and unless disproved constituted a defense to the action. The plaintiff, in opposition, attempted to show that the illness at that time was of a very trifling character—no more than a slight nausea caused by seeing a young boy run over and mangled by the cars at the shops where he worked; that the deceased did not call Dr. Roper, nor take the medicine which was left for him; and that he was practically recovered in the morning. Her theory was that it was not apoplexy nor any ailment serious enough to amount to a breach of his warranty; and the jury have so found. And she went further, and testified that the doctor's attendance on this occasion was to treat her and not the deceased. To meet this claim the defendant

sought to prove by Dr. Roper several things bearing upon the condition of the deceased on that October evening, most of which was excluded. It becomes important, therefore, to determine whether any of such testimony was improperly excluded; for, manifestly, if it was, it had a direct and important influence upon the jury's conclusion.

The offer to show what was the cause of the deceased's illness was excluded on the ground that it was privileged under section 834 of the Code of Civil Procedure. The defendant urges that such objection was waived by the plaintiff because she herself put in evidence the doctor's statement of that condition. That question need not be discussed, for the reason that certain facts which it was clearly proper for the witness to give were then and there also excluded.

The defendant sought to show by Dr. Roper that upon the evening of October 30, 1899, he was called upon to attend the deceased in his professional capacity; also whether he at that time did so attend him; also whether he had any record of the dates when he attended the deceased in Norwich or elsewhere; also if he remembered how long the deceased was confined to his house in October, 1899; also to give the dates between October 30, 1899, and the 1st of April, 1900, when he was called in to attend the deceased, or when the deceased called at his (the doctor's) office to receive medical attendance from him. His answers to each of these inquiries was excluded, on the ground that they were prohibited by section 834 of the Code. This was error. Neither of them called for information that was in violation of such section. Patten v. United Life & Acct. Ins. Ass'n, 133 N. Y. 450, 31 N. E. 342. Yet such information was manifestly pertinent to the issue being then tried, and would doubtless have much weight in controlling the jury's verdict.

So, also, a hypothetical question was put to Dr. Roper, which he was erroneously prevented from answering. It was excluded (as the trial judge stated at the time he ruled upon it) because it assumed the fact that the deceased had cerebral apoplexy. The statement in Dr. Roper's certificate of death, that the deceased did have cerebral apoplexy on October 30th, was direct evidence to that effect, and it was therefore proper to assume that fact in such a question put to an expert. There was some evidence to establish every fact assumed in such question, and therefore the doctor should have been allowed to answer the question. Guiterman v. Liverpool, New York & Philadelphia Steamship Co., 83 N. Y. 358, 365; People v. McElvaine, 121 N. Y. 250, 257, 24 N. E. 465, 18 Am. St. Rep. 820.

It was pertinent to show by an expert that if the deceased had an attack of cerebral apoplexy on October 30, 1899, he could not be "in sound health" on April 20, 1900, when the policy was delivered, and that thus, under the precise terms of the contract, the policy never became obligatory upon the defendant. Hence the evidence excluded was not only proper, but material, and we cannot say it was not harmful to the defendant.

90 N.Y.S.—64

For the foregoing reasons, without discussing any of the other alleged errors, this judgment and order must be reversed. Manifestly, upon another trial, much other evidence may be introduced by either party bearing upon the issue presented, and therefore we cannot now direct final judgment in the action. An order for a new trial must be entered, with costs to the appellant to abide the event. All concur; SMITH and HOUGHTON, JJ., in result.