CHADWICK v. BENEFICIAL LIFE INS. CO.

No. 3333.    Decided May 8, 1919.    (181 Pac. 448.)

1.  EVIDENCE—ADMISSIONS—ACTION ON LIFE POLICY. In beneficiary's action on life policy, where insured sought to avoid policy upon ground of false statements by insured in application as to his health and consultation with physicians, evidence of admissions by beneficiary as to husband's health and consultation with physicians was admissible. (Page 447.)

2.  WITNESSES—CONFIDENTIAL RELATIONS—PHYSICIAN AND PATIENT. Comp. Laws 1917, section 7124, sub. 4, prohibiting physicians from testifying to information acquired attending patient which was necessary to enable him to prescribe or act for patient, without patient's consent, does not preclude physician from

testifying merely as to fact of having been consulted. (Page 447.)

3. WITNESSES — CONFIDENTIAL RELATIONS — PHYSICIANS — AUTOPSY. Physician's testimony as to result of an autopsy is not incompetent, under Comp. Laws 1917, section 7124, subd. 4, prohibiting physicians from testifying without consent of patient, as to information acquired in attending patient necessary to enable him to prescribe or act for patient. (Page 448.)

4. WITNESSES—PRIVILEGED COMMUNICATIONS—PHYSICIAN AND PATIENT. Claim of privilege under Comp. Laws 1917, section 7124, subd. 4, prohibiting physician from testifying to information acquired in attending patient, which was necessary to enable him to prescribe or act for patient without patient's consent, must be brought within clear meaning and spirit of the statute, being a statutory privilege not existing at common law. (Page 448.)

5. TRIAL—DIRECTED VERDICT. If there is any testimony which the jury, as a matter of law, should consider in order to determine the question of liability, the court has no right to direct a verdict. (Page 448.)

6. INSURANCE—LIFE INSURANCE—MISREPRESENTATIONS—BURDEN OF PROOF. In action on life policy, defended on ground that insured in his application misrepresented condition of his health, insurer has burden of proving that answers were not only untrue, but that insured knew or should have known them to be untrue. (Page 449.)

7. EVIDENCE—WHOLE OF CONVERSATION. In action on life policy, defended on ground of false statements by insured in his application as to his condition of health and consultation of physicians, statements by beneficiary to insurer's agents, following death of insured, that questions shown by application had not been asked insured, and that insured had not made the answers appearing therein, were admissible, being part of a conversation between plaintiff and defendant's witnesses, which conversation was solicited by them. (Page 449.)

8. INSURANCE—LIFE POLICY—DEFENSES. In action on life policy, defended on ground that insured had made false statements in answer to questions in application as to condition of health and consultation of physician, plaintiff could prove that no such questions were asked or answers made. (Page 450.)

9. INSURANCE—LIFE INSURANCE—FALSITY OF REPRESENTATIONS. In view of Comp. Laws 1917, section 1154, subd. 3, false statements and answers of insured will avoid policy only if insured knew, or should have known, that statements were false. (Page 455.)

10. TRIAL—JURY QUESTION. The probative force of evidence is for the jury. (Page 457.)

11. INSURANCE—LIFE INSURANCE—FALSITY OF REPRESENTATIONS—
JURY QUESTION. In action on life policy involving issue of
whether insured knew, or had reason to believe, that he was
afflicted with a disease which tended to prejudicially injure his
health and impair his longevity, at the time of making his
application, wherein he represented himself to be in good health,
evidence *held* sufficient to take case to jury. (Page 457.)

Appeal from District Court, Second District, Weber County; *J. D. Call*, Judge.

Action by Maud Chadwick against the Beneficial Life Insurance Company. Judgment for defendant on a directed verdict, and plaintiff appeals.

REVERSED with directions.

*A. G. Horn* of Ogden, for appellant.

*Young & Young* of Salt Lake City, for respondent.

THURMAN, J.

Plaintiff is the widow of J. Charles Chadwick, deceased, and beneficiary of a policy of insurance on his life. She brought this action to recover from defendant the amount of the insurance in the sum of $2,000. The complaint is in the usual form. The answer of the defendant admits the allegations of the complaint, but in substance alleges that the deceased in his application for insurance made certain false and fraudulent statements and answers to questions propounded to him by the medical examiner at the time deceased made his application, and for this reason defendant prays that the action be dismissed.

The case was tried to a jury. The court directed a verdict for the defendant and judgment was entered thereon. Plaintiff appeals. The errors assigned are the admission of certain evidence over plaintiff's objection, and the order of the court directing a verdict.

The application for insurance purports to contain the following questions by the examiner, and answers of deceased:

"Q. Give name and address of physician last consulted. A. None. Q. Are you in good health as far as you know or believe? Yes."

During the course of the trial defendant offered in evidence the testimony of two witnesses, agents employed in its service, as to certain statements alleged to have been made by plaintiff to them shortly after the death of deceased. The statements related to the health of the deceased previous to the issuance of the policy, and also as to whether defendant was liable in view of the questions and answers above quoted. Plaintiff objected to the testimony on the grounds that it was irrelevant, incompetent, and improper and in particular that it was not competent testimony on the question of fraud. The objection was overruled. Exception was taken to the testimony of each witness, but as their testimony is substantially the same the exceptions will be treated as one, and simultaneously disposed of. The substance of the testimony, as far as the same is material here, shows that these witnesses, Romney and Boothe, visited plaintiff at Afton, Wyo., the town in which she resided, shortly after her husband's death, and solicited and procured an interview with her in the presence of her mother and a brother of deceased. The conversation related to the condition of her husband's health for two or three months next previous to his application for the policy, and also as to whether he had consulted a physician during the same period of time. It appears from the testimony that deceased had consulted one or more physicians during the time referred to and had been treated by them for a pain in his back supposed to be rheumatism. The testimony further shows that plaintiff stated in the conversation that her husband had been a big, strong, and vigorous man until March of that year (1916), and that he had then begun to complain of pains in his back that interfered with the performance of his manual labor. He consulted a physician. Dr. Reese, who diagnosed the case and thought it was rheumatism. Other statements purporting to have been made by her appear in the testimony, but for the purpose of disposing of this exception the above is sufficient.

As the plaintiff is the beneficiary of the policy and entitled to the exclusive enjoyment of the benefits that may be derived therefrom, any admissions made by her as to the health of her husband and his consultation with physicians, under the issues presented, were clearly admissible. The objection to the testimony was properly overruled.

Dr. Byron Reese, the defendant's physician at Afton, was sworn as a witness for defendant, and asked as to whether he had been consulted by deceased prior to his application for insurance and answered, "Yes." He was then asked if he had been consulted on more than one occasion and over the objection of plaintiff was permitted to answer that he had. The ground of the objection was that the witness was prohibited by statute from answering. Comp. Laws Utah, 1917, section 7124, subd. 4, prohibits physicians, without the consent of their patients, from testifying in a civil action as to any information acquired in attending a patient which was necessary to enable him to prescribe or act for the patient. The question asked did not call for the disclosure of such information, but was limited entirely to the fact as to whether he had been consulted by deceased. It was not within the statute, and under the issues the testimony was properly admitted.

Respondent cites the following cases: *Deutschmann* v. *Third Ave. Ry. Co.*, 87 App. Div. 503, 84 N. Y. Supp. 887; *Becker* v. *Metropolitan Life Ins. Co.*, 99 App. Div. 5, 90 N. Y. Supp. 1007; *Patten* v. *United Life & Acc. Ins. Ass'n*, 133 N. Y. 450, 31 N. E. 342; *Nelson* v. *Nederland Life Ins. Co.*, 110 Iowa, 600, 81 N. W. 807; *Rhode* v. *Metropolitan Life Ins. Co.*, 129 Mich. 112, 88 N. W. 400; *Briesenmeister* v. *Knights of Pythias*, 81 Mich. 525, 45 N. W. 977; *Cooley* v. *Foltz*, 85 Mich. 47, 48 N. W. 176; *Brown* v. *Metropolitan Life Ins. Co.*, 65 Mich. 306, 32 N. W. 610, 8 Am. St. Rep. 894; *Sovereign Camp, Woodmen of World* v. *Grandon*, 64 Neb. 39, 89 N. W. 448; *Price* v. *Standard Life Ins. Co.*, 90 Minn. 264, 95 N. W. 1118; 3 Cooley's Briefs on Insurance, 2168; 40 Cyc. 2386; 23 Am. & Eng. Ency. Law, 87; Chamberlayne, Ev. 5306, 5307; Wigmore, Ev. section 2384.

The same witness later in his examination, against the objection of plaintiff, was permitted to testify that he performed an autopsy on the body of the deceased a 3, 4 day or two after his death, and found that he had died of tuberculosis of the spine. He testified also as an expert, in substance, that the disease and conditions were such that the deceased would know he was not in good health for two and one-half months before his death. As the policy was applied for about the last of May and the deceased died on the thirteenth of August next following, this testimony was elicited manifestly for the purpose of showing that the deceased must have known he was afflicted with disease when he applied for insurance. The statute above referred to was invoked and relied on in support of this objection. The grounds of the objection, in our opinion, are untenable from every point of view. The privilege claimed does not exist at common law. It was conferred by statute. In order to be available the claim of privilege must be brought within the clear meaning and spirit of the statute. Just how information acquired by means of an autopsy can be said to have been acquired to enable the physician to prescribe or act for the patient presents to our minds an insoluble question. When the patient is dead he is no longer a patient. The only functionaries that can thereafter be said to act for him are the undertaker and the gravedigger, and as to them the statute is silent. If it had been necessary for the witness to supplement the information acquired at the autopsy by information he acquired during his attendance upon the patient, in order to determine the cause of his death, a different question would be presented. But this hypothesis was excluded by other questions propounded to the witness. This exception should not prevail. *Harrison* v. *Sutter St. Ry. Co.*, 116 Cal. 156, 47 Pac. 1019; 40 Cyc. 2388; *Carmody* v. *Capitol Traction Co.*, 43 App. D. C. 245, Ann. Cas. 1916D, 706.

At the close of the testimony, on motion of defendant, the court directed the jury to find for the defendant no cause of action. This order of the court is assigned as 5 error, and is the most serious question presented for

our determination. If there was any testimony which the jury as matter of law should have considered in order to determine the question of liability, the court had no right to direct a verdict.

The issuance of the policy by the defendant was admitted. The burden was on the defendant to void the policy by proving that it was procured by fraud. It was not sufficient merely to prove that the deceased made false answers to questions propounded by the medical examiner. It was incumbent upon defendant to prove that the answers were not only untrue, but that the deceased knew or should have known them to be untrue. The first question presented in this connection is, Were the purported answers of the deceased to the questions propounded in fact made? This is one of the issues in    **6, 7** the case. The witnesses Romney and Boothe both testified that in their conversations with plaintiff, heretofore referred to, she stated to them that deceased, before his death, denied that these questions had been asked him, or that he had made the answers, which appear in the application. This came out as a part of the conversation between plaintiff and defendant's witnesses, which conversation was solicited by them. It stands in the record as the statement of one of the parties to the policy agreement. However slight may be its value as testimony for plaintiff, it is, nevertheless, competent because of the manner in which it was brought into the case.

The evidence is competent for another reason. In this case a question of good faith is involved. Admitting the fact to be true that deceased subscribed his name to the document in which the questions and answers appear, and admitting that it is presumed he did so intelligently and with full knowledge of its contents, yet it must be borne in mind that after all it is only a presumption. There is nothing on the face of the document affirmatively indicating that the deceased actually read it or heard it read, either in whole or in part, and the medical examiner, for some reason not appearing in the record, was not called as a witness. There is therefore, aside from the presumption referred to, a complete hiatus in the evidence as to whether or not the document was in fact read

by the deceased or read to him by some one else before he subscribed his name. If he signed it without reading it, or hearing it read, or if it was read to him, omitting the questions and answers in dispute, certainly the beneficiary of the policy, in a suit to recover the benefits, should, in answer to a charge of fraud in making the answers, be permitted to prove if she can, that in fact no such questions were asked or answers made. The question of good faith on the part of the insured by the defendant's answer is made the very gist of the controversy. As a matter of pleading it is made an essential element of the defense. The insured is charged with willful and deliberate fraud, in that at the time he made his application for the policy, he was not only afflicted with the fatal malady of which he afterwards died, but that at that time he knew he was so afflicted, and had known it for a long time prior thereto. The first, second, and third paragraphs of the answer set forth the theory of defendant's defense, and contain the substance of the provisions of the policy upon which defendant relies. A literal quotation of these allegations at this point will therefore serve a double purpose:

"(1) That the said policy of insurance was issued by this defendant and accepted by said Chadwick on the following express condition and agreement contained in said policy and made part of said contract of insurance, to wit, that the statements and answers contained in the application for insurance and in answer to the medical examiner of the defendant company, and on the faith of which said policy was issued, were in all respects true, and that no information had been withheld touching the past or present state of health of the applicant with which the defendant company should have been acquainted; and upon the further condition, to wit, that the answers and statements so made in said application and to the medical examiner, together with the declaration contained in the said application form, should constitute the application, and be the basis of the contract between said Chadwick and the defendant company.

"(2) That the said Chadwick violated the conditions contained in said application form, and on faith of which the said policy of insurance was issued, in that he stated therein that he was in good health at the time of making application for insurance to the defendant company; and that, further, the said Chadwick, in answer to question No. 11, submitted to him by the medical examiner of the defendant company, 'Are you in good health so far as you

know or believe?' said insured answered 'Yes,' whereas the said Chadwick was at the time, and had been some time prior to applying for insurance with the defendant company, suffering with tuberculosis of the spine, a disease which tends to shorten life, and from which the said Chadwick, in fact, died on or about the thirteenth day of August, 1916; and that at the time of applying for said insurance with the defendant company the said Chadwick well knew that he was so suffering from said disease, and that he had been suffering therewith for some time prior to applying for insurance with the defendant company.

"(3) That the said Chadwick further violated the conditions contained in said contract of insurance, in that in the statement made to the medical examiner of the defendant company, and on faith of which said policy of insurance was issued, in answer to question No. 6 contained therein, 'Give name and address of physican last consulted,' he answered 'None,' whereas, in fact, within the space of a few weeks prior thereto he had consulted doctors at Afton, Wyo., and at Ogden, Utah, in regard to the said disease of tuberculosis of the spine with which he was at such time afflicted and from which he died; further, that while in the care of said physicians he was for some time in a plaster of paris cast for the treatment of said disease."

In addition to this, in its brief in summing up its conclusions, the defendant announces what it declares to be the final test, and emphasizes the declaration:

"The final test in a question of this kind is as to whether or not there has been any evasion, fraud or suppression of material facts, and there must be absolutely good faith in the conduct of the insured."

In support of this contention appellant cites *Farragher* v. *Knights and Ladies of Security*, 98 Kan. 601, 159 Pac. 3.

We would not be justified in occupying so much time and space in defining the real issue presented by appellant, about which there is no dispute between the parties, were it not, for the fact that this precise question has never before been presented to this court, and concerning which there is a sharp conflict among the authorities. Respectable authority can be found maintaining the view that false statements made and false answers given by the insured in his application for insurance concerning matters material to the risk will void the policy irrespective of the question of good faith or honest belief on the part of the insured. The following cases in sup-

port of that doctrine have been called to our attention: *Ætna Life Ins. Co.* v. *France et al.*, 91 U. S. 510, 23 L. Ed. 401; *Jeffries* v. *Life Ins. Co.*, 22 Wall. 47, 22 L. Ed. 833; *Kasprzyk* v. *Metropolitan Life Ins. Co.*, 79 Misc. Rep. 263, 140 N. Y. Supp. 211. The first two of these cases seem to be controlled by the common-law rule, in which the statements and answers of the insured in applying for insurance are treated as warranties, and the policy voided unless the statements and answers are true. The New York case, however, was decided under a statute substantially the same as ours. Comp. Laws Utah 1917, section 1154. This section provides that all policies shall contain:

" * * * Subd. 3. A provision that the policy shall constitute the entire contract between the parties, and that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

The opinion in the New York case, it must be admitted, is exceptionally strong and substantially in point, especially in view of the similarity between the statutes of New York and Utah as above quoted. Later cases in the same court reaffirm the doctrine, but the opinions are by a divided court, and consequently tend to show a weakening as to the doctrine first announced. Many other authorities no doubt could be cited in support of the doctrine announced in these cases, but those already cited and the authorities and cases cited in the opinions will sufficiently illustrate the position taken by those who maintain that view of the question. But as we have already shown when stating defendant's theory of the case, the issue here presented by defendant is that the insured not only made false statements respecting his health at the time of applying for insurance and false answers relating thereto. but it is alleged that at that very time he knew that they were false. In fact the implication is strong to the point that the insured, with intent to deceive and mislead the insurer, made false and untrue statements for the purpose of procuring insurance to which he was not entitled, thereby perpetrating a fraud upon the defendant. While in adopting this theory of the case the defendant assumed a greater burden than would

have been necessary if it had adopted a theory within the principle of the cases above cited, we are nevertheless of the opinion that appellant's conception of the law under which the case should be treated is correct.

In view of our statute and the cases we shall hereafter cite we are inclined to the view that in a case of this kind, where an insurance company relies upon false statements and answers of the insured as a defense against an action on the policy, it must not only allege, as the defendant has done in this case, that the statements and answers are untrue, but also that the insured knew or or should have known them to be untrue at the time he made them. Not only this, but as a necessary corollary in judicial proceedings the truth of such allegations should be substantially established at the trial. The following well-considered cases support this view: *Wheelock* v. *Home Life Ins. Co.,* 115 Minn. 177, 131 N. W. 1081; *Lynch* v. *Insurance Co.,* 150 Mo. App. 461, 131 S. W. 145; *Moulor* v. *American Life Ins. Co.,* 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447; *Mutual Life Ins. Co. of New York* v. *Hilton-Green,* 241 U. S. 613, 36 Sup. Ct. 676, 60 L. Ed. 1202. In the Minnesota case just cited the statute was the same as ours. Fraud was alleged by defendant, in that the assured made false answers to certain questions asked him upon his application for insurance. He procured the insurance in February, 1910, and died in April of the same year. Defendant proved that the insured had made false answers, but beyond that made no offer or attempt to show fraudulent representations or fraudulent concealment. The proof of fraud being insufficient, the trial court directed a verdict for plaintiff. On appeal the judgment was affirmed. In the Missouri case the statute was somewhat dissimilar to ours, and for that reason it is not claimed that the case is exactly in point. Nevertheless it is illuminating and instructive on one or more questions involved in the case before us. The opinion in the Moulor Case is exceedingly strong. It was written by Mr. Justice Harlan, of the United States Supreme Court, and it not only determines the question that statements or answers made by the insured on application for insurance must be proven to be false and known or

should have been known to him to be false, but it also decides questions pertaining to the proper interpretation of provisions contained in policies of insurance and applications therefor. In view of the high standing of that court and the importance of the questions here presented it will be of interest to the reader if we quote in full two paragraphs of the opinion, one in which the real issues are stated, and the other in which the court declares the law. Speaking of instructions to the jury given by the trial court the opinion reads:

"Referring to the seventh question in the application, the court—after observing that the answer thereto was untrue, and the policy avoided, if the insured had been, at any time, afflicted with either of the diseases last referred to—instructed the jury:   'It is of no consequence, in such case, whether he knew it to be untrue or not; he bound himself for its correctness, and agreed that the validity of his policy should depend upon its being so.' Again:   'That he, the insured, did not know he was then afflicted is of no importance whatever, except as it may bear upon the question, was he afflicted?   If he was, his answer (for the truth of which he bound himself) was untrue, and his knowledge, or absence of knowledge, on the subject, is of no consequence.' Further:   'You (the jury) must determine whether the insured was at any time afflicted with either of the diseases named.   If he was, his answer in this respect, was untrue, and notwithstanding he may have ignorantly and honestly made it, the policy is void, and no recovery can be had upon it.'   To so much of the charges as we have quoted the plaintiff excepted."

Then, as to the law pertinent to the issues, in summing up the court says:

"If it be said that an individual could not be afflicted with the diseases specified in the application, without being cognizant of the fact, the answer is that the jury would, in that case, have no serious difficulty in finding that he had failed to communicate to the company what he knew, or should have known, was material to the risk, and that, consequently, for the want of 'fair and true answers,' the policy was, by its terms, null and void.   But, whether a disease is of such a character that its existence must have been known to the individual afflicted with it, and therefore, whether an answer denying its existence was or not a fair and true answer, is a matter which should have been submitted to the jury.   It was an erroneous construction of the contract to hold, as the court below did, that the company was relieved from liability if it appeared that the insured was, in fact, afflicted with the

diseases, or any of them, mentioned in the charge of the court. The jury should have been instructed, so far as the matters here under examination are concerned, that the plaintiff was not precluded from recovering on the policy, unless it appeared from all the circumstances, including the nature of the diseases with which the insured was alleged to have been afflicted, that he knew, or had reason to believe, at the time of his application, that he was or had been so afflicted."

We regard the case as practically decisive of the particular questions we are now concerned with.

In the Mutual Life Case, which was decided in favor of the defendant company, the opinion is by Mr. Justice McReynolds, of the United States Supreme Court, and as far as the questions under review are concerned it reaffirms the doctrine announced in the Moulor Case which we have just considered. The first paragraph of the syllabi reflects the opinion of the court on the point in question:

"Material representations, in an application for life insurance, which are incorrect, *if known to be untrue by the assured when made*, and nothing else appearing, invalidate the policy issued by the insurer relying on such representations, without further proof of actual conscious design to defraud." (Italics ours.)

These cases illustrate the conflicting views of many of the courts respecting this question, which we consider one of the most important relating to the law of insurance. Our statute above quoted says that "all statements made by the insured shall in the absence of fraud be deemed representations and not warranties," and we see no reason to hold that the statute does not mean exactly what it says.

In that view of the case we are of the opinion that in order to void a policy on the grounds of false statements of the insured it is incumbent upon the insurer to both allege and prove actual fraud on the part of the insured as contemplated in defendant's theory of defense in the instant case. Besides this, in our opinion, the cases supporting this view, examples of which we have furnished, are more in accord with reason and justice than those holding the opposite view.

As before suggested this precise question has not hitherto been passed upon by this court. The cases of *Bedmarek* v.

*Brotherhood of American Yeomen,* 48 Utah, 67, 157 Pac. 884, and *Witherow* v. *Mystic Toilers,* 49 Utah, 177, 161 Pac. 1126, cited by appellant, have very little, if any, bearing upon the question before us. They are enlightening, however, upon the questions there presented to the court.

This brings us to a consideration of the evidence for the purpose of determining whether or not the trial court was justified in directing a verdict for defendant.

Under the issues made and the authorities referred to, assuming the deceased made the statements and answers relied on by respondent, the controlling question is, did the deceased in good faith believe he was afflicted with only a temporary ailment, or did he, on the other hand, know, or have reason to believe, that he was afflicted with a disease which tended to prejudicially influence his health and impair his longevity? If the former, the statement, even if untrue, would not as matter of law void the policy; if the latter it would. The testimony introduced by respondent tended strongly to show that the deceased was afflicted with some physical ailment as early as March, 1916, over two months before he applied for insurance; that he was in frequent consultation with a physician, and was receiving medical attention; that he complained of pain in his back, and electric treatment was applied; that he was advised by the physician to come to Utah for medical advice; that he came to Ogden and consulted one or more physicians; that while there he applied for the insurance in question, and made the statements and answers which respondent relies on as a defense. It was shown by the autopsy that deceased died of tuberculosis of the spine, and in the opinion of the physician the conditions were such that deceased must have known that he was not in good health at the time the policy was applied for. It must be admitted that the evidence tended strongly to support respondent's contention, but it did not pass entirely unchallenged. The testimony on behalf of plaintiff tended to show that the deceased, who had previously been in good health and was strong and vigorous, about March, 1916, became afflicted with a pain in his back; that it was supposed to be

rheumatism, in fact was so considered by the company physician who treated him; that up to the time he went to Ogden he had been attending to his farm work and logging in the canyon. Plaintiff testified that she went with deceased on one occasion to the doctor; that she did not realize her husband was seriously ill until in June, 1916; that when he went to Ogden it was not for the purpose of consulting physicians, but merely on a visit; that when he returned in July he was in a plaster of paris cast.

The depositions of eight witnesses, all residents of Afton, Wyo., and neighbors of deceased in his lifetime, were read in behalf of plaintiff. Each of them testified he had known deceased intimately during his lifetime. Several of them had seen him almost daily for several years previous to his death. None of them ever knew of his being sick or attended by a physician until June, 1916, or ever knew of his being unable to do his work, which was farming. The testimony of these witnesses was of a negative character. Its probative force is for that reason limited, but that goes to the weight of the evidence only, and was therefore a question for the jury.

It thus appears there was some substantial evidence before the court and jury to the effect that prior to March, 1916, the deceased was a strong, able-bodied man, capable of logging in the canyon and working on his farm; that in March he complained of pain in his back and consulted Dr. Reese, who treated him for rheumatism; that he still continued to carry on his work; that he went to Ogden on a visit, and when he returned in July he was incased in a plaster of paris cast. There is not a suggestion in any of the evidence that the deceased had reason to believe he was afflicted with anything more than rheumatism until after the policy of insurance was issued, and this affliction was of recent origin. These considerations, together with the testimony of eight of deceased's neighbors, who were intimately acquanted with him for several years before his death and never knew him to be sick or unable to do his work or to consult a physician in regard to his health prior to June, 1916, are sufficient in them-

selves to present a serious question as to whether or not the deceased, at the time he applied for insurance, believed or had reason to believe that he was afflicted with anything more than a temporary ailment. The same rule must be applied in considering the negative answer of deceased as to the name and address of the physician last consulted. The uncontradicted evidence shows that Dr. Reese, whom the deceased consulted, treated him for rheumatism before he went to Ogden. There is no evidence that he was treated for anything else by any other physician either in Wyoming or Utah prior to his application for insurance. In fact there is no evidence that prior to making his application he consulted any physician at all except Dr. Reese at Afton, Wyo. Hence it cannot be contended as matter of law that deceased knew or had reason to believe he was afflicted with anything more than a temporary ailment at the time he applied for insurance. Everything considered, the court is of the opinion the case was one for the jury, and that the trial court erred in directing a verdict for the defendant.

Inasmuch as an order will be made granting a new trial, and in view of the fact that plaintiff's counsel vigorously contended in the brief and argument of the case that plaintiff was entitled to a directed verdict in her behalf, it is pertinent to remark that such contention is wholly without merit. The evidence in the record is amply sufficient to sustain a verdict for defendant if the case had been submitted to the jury, and the jury had so found.

The judgment is reversed, with directions to the trial court to grant appellant a new trial. Costs of appeal to be taxed against respondent.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.