902

ZOLINTAKIS et al. v. EQUITABLE LIFE
ASSUR. SOC. OF THE UNITED
STATES.

No. 1934.

Circuit Court of Appeals, Tenth Circuit.

Jan. 3, 1940.

Rehearing Denied March 8, 1940.

Parnell Black and H. L. Mulliner, both of Salt Lake City, Utah (Calvin W. Rawlings, H. E. Wallace, and Edgar C. Jensen, all of Salt Lake City, Utah, on the brief), for appellants.

J. D. Hurd, of Salt Lake City, Utah (E. D. Hurd, of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The Equitable Life Assurance Society of New York, herein referred to as the company, issued an insurance policy to James Orfanos on his life, in the sum of $7,500. The policy provided for double indemnity in case of accidental death. Orfanos died while the policy was still in full force and effect. Claim was filed for accidental death, and proof of loss was submitted to the company. Liability was denied, and an action was instituted to recover on the policy. At the conclusion of all of the evidence, the trial court granted the motion of the company for a directed verdict in its favor, and judgment was entered thereon. An appeal was taken to this court and the case was reversed and remanded and a new trial granted. Zolintakis v. Equitable Life Assurance Society, 10 Cir., 97 F.2d 583. Thereafter, an amended answer was filed denying liability because, it was alleged, deceased had knowingly made material misrepresentations in the procurement of the policy of insurance. Other defenses also were set up, but they are not material here, as the case was submitted to the jury on special interrogatories under Rule 49(a) of the new federal rules, 28 U.S.C.A. following section 723c and the other defenses in the answer have been waived.

The material parts of the application are as follows: "Part I * * * My principal occupation is that of clerk in grocery store at Lingos Grocery #126 W. 2, Salt. * * * My other occupations are None. My residence is No. 126 West 2nd So. St., Salt Lake City, Utah. * * * All of the foregoing answers and all those contained in Part II hereof are true, and are offered to the Society as an inducement to issue the policy or policies for which application is hereby made."

Material portions of Part II of the application are as follows: "3. A. How long have you lived at your present address? (City or Town). A. One year. * * * 4. A. What is your occupation? (Position and kind of business.) A. Grocery Business. B. How long have you been so engaged? B. One year. * * * E. State occupations and home addresses during last five years differing from the present. Previous occupations and business addresses, Laramie, Wyoming. From year 1928 to

year 1932. Previous home addresses (City, Street and No.) Candy Mfg. From year 1928 to year 1932. * * * (I agree that the foregoing answers shall be part of my application, which shall consist of Parts I and II taken together, and that the foregoing answers shall also become part of any policy contract that may be issued on the strength thereof.)"

The answer to Question 4. E. of Part II of the application was not involved in the first trial.

The testimony established substantially the following facts: George Cayias, a special agent of the company, knew James Orfanos. He had met him at Lingos Grocery Store and secured his application for this policy. He took the policy to the grocery store to deliver, but was told that Orfanos was no longer working there. A day or two later he found Orfanos on the street and was informed that he did not want the policy; that he had lost his job and could not pay for it. However, after some negotiations, Orfanos took the policy. The premiums on the policy were paid. By whom they were paid is not a material issue in this case.

Orfanos was not working at the grocery store when the policy was delivered. He had never lived at the grocery store; there were no living quarters there. While he worked at the grocery store he lived at the Boston Hotel. During the five years preceding the issuance of this policy he lived at various places. For a short time in 1933 he lived at a hotel in Price, Utah. He also lived in a shack near Price, Utah, picking greens for the market. During parts of 1932 and 1933 he lived with Nick Valdemis at Laramie, Wyoming. While working at Lingos Grocery Store he got his mail at 126 West 2nd So. St., and even while away, his mail came to this place and was forwarded to him.

His employment was as varied as his residence. He worked at Lingos Grocery Store at 126 West 2nd So. St. for about two weeks. During July, September and October of 1933 he worked in a restaurant at Price, Utah. He was also in jail in 1933 for a short time, convicted on a charge of bootlegging.

At different times, from 1928 to 1932, he worked in a candy kitchen in Laramie, Wyoming, at a cigar counter and in a pool-hall. There was some testimony that at times his business was that of gambling and bootlegging.

There was testimony that the Boston Hotel was a place where bootlegging was permitted, criminals gathered, and prostitutes plied their trade. The company made an independent investigation of Orfanos when the application was taken, the investigator reporting that applicant resided at 126 West 2nd South Street, Salt Lake City; that he was employed as a grocery clerk; and that he had lived in Laramie, Wyoming, where he was engaged as a candy manufacturer. At the conclusion of the evidence, the court submitted the case to the jury on special interrogatories. The first eleven interrogatories were submitted by plaintiff, and together with the answers, were as follows:

"1. Was the insured's answer to the question in part 1 of the application: 'My principal occupation is that of' Answer: 'Clerk in grocery store at Lingos Grocery, 126 W 2 So St.' knowingly false when made? Answer: No.

"2. If your answer to the foregoing is yes, then: (a) was the insured's answer to the foregoing question, if not strictly true, made by the insured knowingly and made intentionally for the purpose of inducing the Insurance Company and thus procuring the policy from it by fraud? Answer: No. (b) Was this answer by the insured to this question relied upon by the defendant Insurance Company so that the Insurance Company was thereby deceived and induced to issue this policy? Answer: Not wholly, but in part. (c) Was this answer contained in the application, namely: 'clerk in grocery store at Lingos Grocery, 126 W. 2 So. St.' material as affecting the risk insured against in the policy contract? Answer: Yes.

"3. Was the insured's answer to the question in part 1 of the application: 'My residence is No.' answer: '126 W 2 So St., Salt Lake City, Utah,' knowingly and intentionally untrue when made? Answer: No.

"4. If you find that the foregoing answer was not strictly true when made then (a) Was the insured's foregoing answer to the foregoing question made by the insured knowingly and made intentionally for the purpose of inducing the Insurance Company and thus procuring the policy from it by fraud? Answer: No. (b) Was this answer by the insured to this question relied upon by defendant Insurance Company so that the Insurance Company was thereby deceived and induced to issue this policy? Answer: Not wholly, but in part. (c) Was

this answer contained in the application, namely: '126 W 2 So St., Salt Lake City, Utah,' material as affecting the risk insured against in the policy contract? Answer: Yes.

"5. Was the insured's answer to question 3-2 in part 2 of the application: 'How long have you lived at your present address? (City or town)', answer: 'One year,' (a) intended to be an answer as to a specific street address? Answer: Yes. or (b) Was it intended as being an answer as to the city or town only? Answer: No.

"6. If you find that the foregoing answer to the foregoing question was not strictly true as to an entire one year, then (a) Was said answer made by the insured knowingly and made intentionally for the purpose of inducing the Insurance Company and thus procuring the policy from it by fraud? Answer: No. (b) Was said answer by the insured to this question relied upon by the defendant Insurance Company so that the Insurance Company was thereby deceived and induced to issue this policy? Answer: Not wholly, but in part. (c) Was said answer material as affecting the risk insured against in the policy contract? Answer: Yes.

"7. Was the insured's answer to question 4-a of part 2 of the application: 'what is your occupation? (Position and kind of business)' Answer: 'grocery business' intended (a) as an answer with relation to his position? Answer: No. Or (b) Was it intended as an answer to the question as to 'kind of business' in which he was employed? A. Answer: Yes.

"8. If your answer to the foregoing is that the insured's answer was intended as an answer to the question as to kind of business, then was his answer to the next question, 4-b, part 2, 'How long have you been so engaged?' Answer: 'One year,' intended to be an answer as to the time he had been engaged in such line of business? Answer: yes.

"9. If you find that the foregoing answers to questions 4-a and 4-b, part 2, of the application, were not strictly true when made, then: (a) Were said answers made by the insured knowingly and made intentionally for the purpose of inducing the Insurance Company and thus procuring the policy from it by fraud? Answer: No. (b) Were said answers made by the insured to these questions relied upon by the defendant Insurance Company so that the Insurance Company was thereby deceived and in-

duced to issue this policy? Answer: Not wholly, but in part. (c) Were these said answers material as affecting the risk insured against in the policy contract? Answer: Yes.

"10. Was the insured's answer to question 4-e of part 2 of the application: 'State occupations and home addresses during the last five years' different from the present' knowingly and intentionally untrue? Answer: Occupation, yes, address no.

"11. If you find that the answer to said question was not strictly true when made, then (a) Was said answer made by the insured knowingly and made intentionally for the purpose of inducing the Insurance Company and thus procuring the policy from it by fraud? Answer: No. (b) Was said answer by the insured to this question relied upon by the defendant Insurance Company so that the Insurance Company was thereby deceived and induced to issue this policy? Answer: Not wholly, but in part. (c) Was said answer material as affecting the risk insured against in the policy contract? Answer: Yes."

Interrogatories 12 to 16 were requested by intervenor and are not material to the issues involved. Interrogatories 17 to 32 were submitted by the company. The substance of the answers given by the jury to interrogatories 17 to 32 was that the insured had a principal occupation, which was that of grocery clerk; that he had been engaged in this occupation between 12 and 60 days; that the other occupation of insured was that of a fry cook, in which he had engaged for four months; that between 1928 and 1932 insured was engaged as a pool-hall attendant, railroad hand, gambler and candy manufacturer; that at the time he applied for the insurance he was temporarily employed in the grocery business; that at that time he had no other occupation; that he resided at the Boston Hotel, Salt Lake City, Utah; that this was a place of ill repute; that insured knowingly made an untrue statement concerning the duration of his stated occupation as a grocery clerk, but not with intent to defraud; that he knowingly made an untrue statement in response to Question 4. E., Part II of the application, as to occupation, but not as to address; that he did not make a false statement or answer in response to Question 4. D., Part II of the application; that information as to the true facts concerning insured's occupations, if any, and the duration thereof for the year immediately preceding his applica-

tion for the insurance would have, to some extent, influenced the company's judgment on his application as to the acceptance or rejection thereof or in estimating the degree and character of risk suffered or in fixing the amount or rate of premium to be charged.

The jury's answers to the special questions were tantamount to a finding that insured's answers to questions touching his residence, length of time engaged in his principal business, as well as his other occupations, were not true; that the answers were material and relied on in part by the company in issuing the policy, but that they were not knowingly and intentionally untrue nor made with intent to defraud.

The court concluded that there was a conflict between the decisions of this court in Zolintakis v. Equitable Life Assurance Society, supra, and the decision of the Supreme Court of Utah in Chadwick v. Beneficial Life Ins. Co., 54 Utah 443, 181 P. 448; Id., 56 Utah 480, 191 P. 240; that the decision in the Zolintakis case, supra, declares a rule of law in this case and was binding on the trial court. Judgment was entered for the defendant, from which an appeal has been taken to this court.

The decisions are not unanimous on what elements are necessary to establish the defense of material misrepresentations. A long line of respectable decisions holds that where untrue answers are given as to material matters, the policy may be avoided without regard to whether insured knew or should have known that the answers were not true. Germania Life Ins. Co. of New York City v. Klein, 25 Colo.App. 326, 137 P. 73; Aetna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S.Ct. 186, 58 L.Ed. 356; Security Life Ins. Co. v. Black's Adm'r, 190 Ky. 23, 226 S.W. 355; Metropolitan Life Ins. Co. v. Feczko, 26 Ohio App. 287, 159 N.E. 486; Baumann v. Preferred Accident Ins. Co. of New York, 225 N.Y. 480, 122 N.E. 628.

Other courts have held that before the defense of misrepresentation of material facts is established, it is necessary not only to prove the misrepresentations, but also that they were made with intent to deceive or defraud. Moulor v. American Life Ins. Co., 111 U.S. 335, 4 S.Ct. 466, 28 L.Ed. 447; Livingood v. New York Life Ins Co., 287 Pa. 128, 134 A. 474; Shapiro v. Metropolitan Life Ins. Co., 110 N.J.Eq. 287, 159 A. 680; Monahan v. Mutual Life Ins. Co., 192 Wis. 102, 212 N.W. 269.

Utah has adhered to the more liberal doctrine. In Chadwick v. Beneficial Life Ins. Co., 54 Utah 443, 181 P. 448, 452, 453, the Supreme Court of Utah said: " * * * we are of the opinion that in order to void a policy on the grounds of false statements of the insured it is incumbent upon the insurer to both allege and prove actual fraud on the part of the insured as contemplated in defendant's theory of defense in the instant case."

On the second appearance of this case in the Supreme Court of Utah, it adhered to its former pronouncement by declaring: "If the insured at the time of making his application for a policy has knowledge or good reason to know that he is afflicted with a disease that renders his condition serious, and that thereby his longevity will be prejudicially impaired, his statements and representations to the contrary in reply to specific inquiries constitute a fraud practiced upon the insurer, and which, when successfully proven, invalidates the policy." 56 Utah 480, 191 P. 240, 245.

Judge Thurman, concurring specially, said: "It follows, therefore, that in my opinion the policy of insurance was not procured by the deceased in good faith, believing he was entitled thereto, but was procured through fraud and misrepresentation, * * *." 56 Utah 480, 191 P. 240, 250.

By this decision Utah is committed to the liberal doctrine that before misrepresentations of material facts will void a policy of insurance it must be established that they were not only knowingly made but also wilfully and intentionally, with intent to deceive and defraud.

In Moulor v. American Life Ins. Co., supra, the court, in discussing the meaning of "false", said [111 U.S. 335, 4 S.Ct. 471, 28 L.Ed. 447]: "In one sense, that only is true which is conformable to the actual state of things. In that sense, a statement is untrue which does not express things exactly as they are. But in another and broader sense the word 'true' is often used as a synonym of honest, sincere, not fraudulent."

This definition was quoted with approval by this court in Sentinel Life Ins. Co. v. Blackmer, 10 Cir., 77 F.2d 347, where it was held that misrepresentations will not constitute a defense to an action on a policy of insurance unless they were intentionally untrue or were made with reckless disregard for their truth or falsity.

In the former decision of this case by this court, 10 Cir., 97 F.2d 583, 586, it was said: "A misrepresentation will not constitute a defense to an action on a policy of insurance unless it was intentionally untrue or was made with a reckless disregard for its truth or falsity."

The court further said: "Where an insured knowingly makes a material misrepresentation, proof of an actual, conscious purpose to deceive is not necessary."

■ One cannot knowingly conceal or misrepresent facts which one knows would influence the risk or the issuance of the policy, and then be heard to say that he did not intend to deceive or defraud. The pronouncements of this court in the former decision follow the law as declared in the Chadwick case by the Supreme Court of Utah.

The case here presented only two issues for determination by the jury. First, did Orfanos knowingly give false answers respecting his residence, length of time engaged in his principal business, as well as other occupations in which he had been engaged? and, second, were such answers made with intent to deceive or defraud the company? These questions were properly submitted to the jury by appropriate interrogatories. The jury answered that Orfanos did not knowingly make a false answer when he stated his principal occupation was that of a clerk in a grocery store; that he did not intentionally and knowingly give his residence as 126 West 2nd South Street, Salt Lake City, Utah; that he did not intentionally and knowingly give a false answer as to the length of time he had lived at his present address; that he did not intentionally and knowingly misstate the length of time in which he had been engaged in the business of grocery clerk; that he did knowingly give wrong answers as to his occupations during the past five years, but not as to his addresses; that none of the answers given by Orfanos to these questions was given with intent to deceive or defraud the company. The jury further found that the answers to the questions were material and were relied on in part by the insurance company in the issuance of the policy of insurance.

■ These interrogatories were properly submitted to the jury and their answers are to the effect that while insured's misrepresentations were material and relied on in part by the company, none of them was made by insured with intent to deceive or defraud the company.

The answers to the special interrogatories required that judgment be entered for plaintiff.

The judgment of the trial court is reversed and the cause is remanded. with direction to enter judgment for plaintiffs.